## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,
611 Pennsylvania Ave. SE #231
Washington, DC 20003,

   *Plaintiff*,

   v.

U.S. GOVERNMENT ACCOUNTABILITY
OFFICE,
441 G St. NW
Washington, DC 20548,

   *Defendant*.

Civil Action No. 25-662

## <u>COMPLAINT</u>

1. Plaintiff America First Legal Foundation ("AFL") brings this action against the United States Government Accountability Office ("GAO") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. Under FOIA, "agency" "means each authority of the Government of the United States," 5 U.S.C. § 551(1), including any "establishment in the executive branch of the Government" and "any independent regulatory agency." *Id*. § 552(f)(1). The term "does not include" "the Congress." *Id*. § 551(1).

3. Under Title 5, which includes FOIA, GAO is an "executive agency." *See* 5 U.S.C. §§ 104 (defining GAO as an "independent establishment"), 105 (defining "Executive agency" to include an "independent establishment). Thus, GAO is subject to FOIA.

4. That GAO is an executive branch agency subject to FOIA is confirmed by GAO's exercise of executive powers.

5. Likewise, that GAO is headed by the Comptroller General, an officer appointed by the President with the advice and consent of the Senate, further confirms that GAO is an executive branch agency subject to FOIA.

6. Decisions that, in other contexts, characterized GAO as part of the legislative branch did not consider these points, including GAO's definition in Title 5 as an "executive agency" and its exercise of vast executive powers. And the Supreme Court has now clarified that agencies exercising executive power are necessarily part of the executive branch. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020) ("The entire 'executive Power' belongs to the President alone.").

7. Thus, GAO is an executive branch agency and subject to FOIA. Its refusal to comply with AFL's FOIA request is unlawful.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Additionally, it may grant declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

9. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

10. Plaintiff AFL is a nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal

protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States. AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, all to educate the public. Its mission depends on receiving official information through FOIA requests like the one issued to GAO here.

11.    Defendant GAO is an executive branch agency with headquarters at 441 G St., NW, Washington, DC 20548.

## FACTUAL BACKGROUND

12.    The Department of Health and Human Services' ("HHS") Office of Refugee and Resettlement (ORR) shelters are tasked with ensuring the care and custody of unaccompanied alien children in HHS custody.

13.    In a report issued October 7, 2020, entitled "Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities," GAO stated that HHS "hasn't met its own targets for how frequently it visits facilities, and doesn't consistently share information with state agencies that license them." Freedom of Information Act Request from America First Legal Foundation to U.S. Government Accountability Office, at 1 (Mar. 23, 2023) (attached as Ex. 1) (quoting GAO-20-609, https://perma.cc/GM6U-HB8H).

14.    On March 23, 2023, AFL submitted a FOIA request to GAO seeking several records relating to the October 7, 2020 report. Ex. 1, at 2–3.

15.    On March 24, 2023, AFL received an email from GAO acknowledging receipt of the request and assigning it the case number PRI-23-127. Letter from Stephen E. Chappell to Reed D. Rubinstein (attached as Ex. 2).

16.    After nearly a year had gone by, AFL requested a status update from GAO. Letter from AFL to Stephen E. Chappell (attached as Ex. 3).

17.    On May 15, 2024—about two months later—GAO denied AFL's FOIA request, stating that "[a]s an agency responsible to the Congress, GAO is not subject to the Freedom of Information Act." Letter from Francis A. Minor to Reed D. Rubinstein (attached as Ex. 4). GAO explained that it instead applied its own disclosure regulations, contained in 4 C.F.R. Part 81. GAO located no records on some requests and declined to release any records for others. Ex. 4, at 2.

18.    On July 12, 2024, AFL appealed GAO's denial of AFL's FOIA request, arguing in detail that "GAO is subject to FOIA." Letter from Michael Ding to Gene Dodaro (attached as Ex. 5).

19.    On August 26, 2024, GAO denied AFL's FOIA appeal and again insisted that GAO was not subject to FOIA. Letter from Edda Emmanuelli Perez to Michael Ding (attached as Ex. 6).

### GAO IS AN "EXECUTIVE AGENCY" SUBJECT TO THE FOIA

20.    Title 5 of the U.S. Code defines GAO as an "independent establishment," and it then defines "an independent establishment" as an "Executive agency." 5 U.S.C. §§ 104, 105. So, at least for purposes of Title 5, GAO is an "executive agency."

*See Lawrence v. Staats*, 665 F.2d 1256, 1258 (D.C. Cir. 1981) ("GAO [i]s an executive agency under 5 U.S.C. § 105").

21.     Under the Administrative Procedure Act ("APA"), located in Title 5, an "agency" is "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1)(A). The definition excludes "the Congress." *Id.* For purposes of the FOIA—located in Title 5 too—an "agency" also includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. 552(f)(1); *see Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997).

22.     In short, FOIA generally "allows requests for information from an 'Executive agency.'" *Maloney v. Murphy*, 984 F.3d 50, 69 (D.C. Cir. 2020), *vacated and remanded sub nom. Carnahan v. Maloney*, 143 S. Ct. 2653 (2023); *see Prechtel v. Fed. Commc'ns Comm'n*, 330 F. Supp. 3d 320, 325–26 (D.D.C. 2018). Because GAO is an "executive agency" under Title 5, 5 U.S.C. § 105, it is both an "authority of the Government of the United States" and an "establishment in the executive branch." 5 U.S.C. §§ 551(1)(A), 552(f)(1). That makes it subject to the FOIA.

23.     GAO's organic statute confirms the point. There, GAO is defined as "an instrumentality of the United States Government independent of the executive departments," 31 U.S.C. § 702(a), which echoes Title 5's description of GAO as an

"independent establishment" that is also an "authority of the Government of the United States."

24.    That 31 U.S.C. § 702(a) defines GAO as outside "the executive departments" does not mean that it is outside the executive *branch*. Executive agencies exist outside of "executive departments." *See* 31 U.S.C. § 102 ("In this title, 'executive agency' means a department, agency, or instrumentality in the executive branch of the United States Government."); 5 U.S.C. § 105 ("For the purpose of this title, 'Executive agency' means an Executive department, a Government corporation, and an independent establishment."); *id.* § 101 (listing "Executive departments").

25.    By statute, "[t]o the extent applicable, all laws generally related to administering an agency"—defined to exclude "the legislative branch"—"apply to the Comptroller General," GAO's head. 31 U.S.C. §§ 701(a), 704(a).

26.    Congress's determination that GAO should be considered an "executive agency" for Title 5 purposes should be conclusive: GAO is subject to the FOIA. Two elements confirm that conclusion. First, GAO is headed by executive officers appointed by the President. Second, GAO exercises substantial executive powers. GAO's contrary arguments are unavailing.

*GAO Is Headed By Executive Officers*

27.    31 U.S.C. § 702 creates the GAO and establishes the Comptroller General as its head.

28.    The Comptroller General and his Deputy are both executive officers whom the President appoints with the advice and consent of the Senate. 31 U.S.C.

§ 703(a)(1); *see Buckley v. Valeo*, 424 U.S. 1, 128 n.165 (1976) ("[T]he Comptroller General is appointed by the President in conformity with the Appointments Clause.").

29.     The Comptroller General and his Deputy are paid at a rate equal to the pay rate of level II and level III officers of the Executive Schedule. 31 U.S.C. § 703(f).

30.     Both the Comptroller and his deputy "may be removed" through impeachment. 31 U.S.C. § 703(e). Under Article II, § 4, impeachment is for removing "civil officers"—historically understood to mean high-level executive officers. *See* Asher C. Hinds, *Hinds' Precedents of the House of Representatives of the United States* §§ 2444–68 (1907), https://perma.cc/V5E6-L4FA.

31.     The Comptroller General itself has referenced "his status as an 'executive' officer," citing 5 U.S.C. §§ 104 and 105, as well as congressional statements in accord. *See* Brief for Appellant Comptroller General of the United States 40 & n.118, *Bowsher v. Synar*, Nos. 85-1377, 85-1378, 85-1379, 1986 WL 728077 (U.S. Mar. 19, 1986) (hereinafter "*Synar* Brief") (citing 131 Cong. Rec. S14,659 (daily ed. Nov. 1, 1985) (Sen. Packwood) (GAO is an "executive agency"); *id.* at S14,666 (Sen. Hollings) (GAO "is an executive body. It can make orders.")).

32.     Thus, the Comptroller General has said, "the Comptroller General is an officer of the United States charged with administrative duties." Reply Brief for Appellant Comptroller General of the United States 4, *Bowsher v. Synar*, Nos. 85-1377, 85-1378, 85-1379, 1986 WL 728085 (U.S. Apr. 16, 1986) (hereinafter "*Synar* Reply Brief").

33.    The United States likewise initially described the Comptroller General as "official of the executive department." Substitute Brief for the United States on Reargument, *Myers v. United States* 96, No. 2 (U.S. Apr. 17, 1925) (hereinafter "*Myers* Brief").

34.    "When the possibility arose in the 1970s that Congress might authorize itself to appoint the Comptroller General, a Department [of Justice] spokesman responded:

> You can't do that. You could do it if the General Accounting Office were an agency that only performed legislative functions. But there are a number of responsibilities that GAO now has and I am sure it would want to retain that are really executive in nature—their enforcement of a variety of programs that come within what is customarily thought of as execution of the laws.
> If that is the case, then the head of that department has to be selected in a way consistent with the appointments clause of the Constitution."

*Synar* Reply Brief 8 (quoting *GAO Legislation: Hearings on S.1878 & S.1879 Before the Subcomm. on Energy, Nuclear Proliferation, and Federal Services of the Senate Comm. on Governmental Affairs*, at 77, 96th Cong., 1st Sess. 87 (1979) (Dep. Asst. Att'y Gen. Hammond)).

35.    The statute provides that "[e]xcept as provided in subsection (e) of this section, the term of the Comptroller General is 15 years." 31 U.S.C. § 703(b). Subsection (e) provides that "[a] Comptroller General or Deputy Comptroller General may retire after becoming 70 years of age and completing 10 years of service as Comptroller General or Deputy Comptroller General," along with mechanisms by which they "may be removed." *Id.* § 703(e). Both the Comptroller and his Deputy "may be removed" via a "joint resolution of Congress, after notice and an opportunity for a

hearing," but "only for (i) permanent disability; (ii) inefficiency; (iii) neglect of duty; (iv) malfeasance; or (v) a felony or conduct involving moral turpitude." *Id.* § 703(a).

36.    To the extent this provision purports to limit the President's removal power of an executive officer, it is constitutionally dubious. *See Myers* Brief, *supra*, at 96–101 (attacking the constitutionality of the Comptroller General's removal restrictions); *cf. Synar* Reply Brief, *supra*, at 2–3 ("It was precisely because of the Comptroller General's status as a presidentially appointed officer of the United States charged with administrative functions that President Wilson objected to congressional participation in his removal, an objection that th[e] [Supreme] Court, at the urging of Solicitor General Beck, expressly seconded in *Myers.* After the veto, the House floor manager expressly agreed with President Wilson that 'the officer we are creating here [is] an officer of the United States, and his appointment would have to fall under the provisions of Article II of section 2 of the Constitution.' Congress in 1921 disagreed only on what manner of removal the Constitution permitted for such an officer.").

37.    In any event, as the Comptroller General has explained, "No factual basis exists for believing that the removal provision has made the Comptroller General subservient to Congress." *Synar* Brief, *supra*, at 32. Rather, the Comptroller General "appears to be one of the most independent officers in the whole of the federal government." *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 885 (3d Cir.), *on reh'g*, 809 F.2d 979 (3d Cir. 1986).

*GAO Exercises Executive Powers*

38.     That the GAO is an executive branch agency subject to FOIA is also confirmed by its exercise of substantial executive powers.

39.     The Comptroller General has explained that "the premise of the 1921 Act"—which gave rise to the GAO—"was to create the Comptroller General as an officer of the United States charged with administrative as well as legislative and judicial functions." *Synar* Reply Brief, *supra*, at 2. "The statute transferred to him all of the administrative and other functions previously performed in the Treasury Department by the Comptroller of the Treasury, an officer of the United States." *Id.*; *see* 42 Stat. 23 (1921) ("The offices of Comptroller of the Treasury and Assistant Comptroller of the Treasury are abolished, to take effect July 21, 1921 . . . . [A]ll books, records, documents, papers, furniture, office equipment and other property of the office of the Comptroller of the Treasury shall become the property of the General Accounting Office.").

40.     From the start, the Comptroller General's "functions plainly involved the [executive] administration of the laws. They included: (1) settling all accounts of the federal government and supervising the recovery of debts owed to it; (2) certifying balances that were conclusive on the executive departments; (3) suing for all delinquencies of revenue officers and for all debts owed to the federal government; (4) making advance determinations on questions of payment when requested by disbursing officers and department heads; and (5) prescribing the forms of keeping and rendering public accounts of the federal government." *Synar* Brief, *supra*, at 19.

41.    First, "the function which [the Comptroller General] exercises in auditing and settling claims against the government is precisely that which was previously exercised by the Accounting Office in the Treasury Department." *Globe Indem. Co. v. United States*, 291 U.S. 476, 480 (1934).

42.    By statute, "[t]he Comptroller General shall settle all accounts of the United States Government and supervise the recovery of all debts finally certified by the Comptroller General as due the Government." 31 U.S.C. § 3526(a). "On settling an account of the Government, the balance certified by the Comptroller General is conclusive on the executive branch of the Government," as is any decision "to change the account." *Id.* § 3526(d). Agency heads "may request a decision from the Comptroller General on a question involving (1) a payment the disbursing official or head of the agency will make; or (2) a voucher presented to a certifying official for certification." *Id.* § 3529.

43.    The Comptroller General may "relieve a present or former accountable official or agent of an agency responsible for the physical loss or deficiency of public money, vouchers, checks, securities, or records, or may authorize reimbursement from an appropriation or fund available for the activity in which the loss or deficiency occurred for the amount of the loss or deficiency paid by the official or agent as restitution." 31 U.S.C. § 3527(a).

44.    "[W]hen the Comptroller General reviews the decision of a disbursing or certifying officer under 31 U.S.C. § 3529 in order to determine whether that decision complies with the law, the Comptroller General is necessarily interpreting the

provisions of the underlying law" and "bind[ing] persons in the executive branch to his construction of the law"—each is "plainly an executive rather than a legislative function." *Comptroller General's Authority to Relieve Disbursing and Certifying Officials From Liability*, 15 U.S. Op. Off. Legal Counsel 80, 83 (1991); *see Synar*, 478 U.S. at 733 ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

45.    The Comptroller General has authority to adjust accounts as necessary after "a loss to the United States Government resulting from the fault or negligence of [an] official or agent" or an "uncollectable" loss. 31 U.S.C. § 3530(a).

46.    This authority to settle and adjust accounts "is an executive function and in performing it the Comptroller General acts as a member of the Executive branch of the Government." *U.S. ex rel. Brookfield Const. Co. v. Stewart*, 234 F. Supp. 94, 99 (D.D.C), *aff'd*, 339 F.2d 753 (D.C. Cir. 1964).

47.    Another category of executive powers possessed by the Comptroller General is deciding bid protests—which directly affects private entities with government contracts. "A protest concerning an alleged violation of a procurement statute or regulation shall be decided by the Comptroller General," 31 U.S.C. § 3552(a), and generally "a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending." *Id.* § 3553(c)(1). If a bid protest is filed within ten days *after* the date a contract is awarded and performance has begun, the procuring agency "shall immediately direct the

contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract." *Id.* § 3553(d)(3)(A).

48.     As the Office of Legal Counsel has explained, because "a procuring agency is required to suspend a procurement upon the filing of a bid protest until the Comptroller General issues his decision on the protest," "the Comptroller General is given the power to determine when the stay will be lifted by the issuance of his decision on a bid protest." *Implementation of the Bid Protest Provisions of the Competition in Contracting Act*, 8 U.S. Op. Off. Legal Counsel 236, 246 (1984). In other words, the Comptroller General has the "power to dictate when a procurement may proceed"—"a power that has the effect of altering the legal rights, duties and relations of persons outside the legislative branch." *Id.* at 247 (cleaned up).

49.     More broadly, the bid protest provisions give the Comptroller General power "to determine compliance with law, to issue recommendations that are virtually impossible for an agency to refuse to implement, and to grant damages." James McKay Weitzel, Jr., *GAO Bid Protest Procedures Under the Competition in Contracting Act: Constitutional Implications After* Buckley *and* Chadha, 34 Cath. U. L. Rev. 485, 516 (1985); *see* 31 U.S.C. §§ 3554, 3555. "In hearing bid protests, then, the Comptroller General functions as" what used to be called "an independent agency," not as an "arm[] of the legislature." Weitzel, *supra*, at 523; *see* Edward R. Murray, *Beyond* Bowsher*: The Comptroller General's Account Settlement Authority and Separation of Powers*, 68 Geo. Wash. L. Rev. 161, 165 (1999) ("[T]he Comptroller

General issues these decisions," which "require the GAO to provide interpretations of law," "directly to executive branch agencies and employees, rather than reporting them to Congress as its investigatory arm.")

50.    The Comptroller General exercises other executive powers, too. For instance, he has the authority to "investigate all matters related to the receipt, disbursement, and use of public money." 31 U.S.C. § 712(1). And he has the authority to "evaluate the results of a program or activity the Government carries out under existing law" on his own "initiative." *Id.* § 717(b)(1).

51.    "Since 1980, the Comptroller General has been able to enforce these investigatory powers by bringing a civil action in the United States District Court for the District of Columbia to require 'the head of [an] agency to produce a record.'" *Walker v. Cheney*, 230 F. Supp. 2d 51, 54 (D.D.C. 2002) (quoting 31 U.S.C. § 716(b)(2)). The Comptroller General can even "subpena [sic] a record of a person not in the United States Government" and "bring a civil action" to compel production. 31 U.S.C. § 716(c). The statute requires no congressional involvement in or notice of such actions against private parties. *See id.*

52.    As the Supreme Court has held, "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley*, 424 U.S. at 138 (quoting U.S. Const. art. II, § 3); *accord* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment, *Walker v. Cheney*,

No. 1:02-cv-340-JDB, 2002 WL 32388017 (D.D.C. May 21, 2002) (Department of Justice arguing that "[t]he judicial-enforcement provisions of § 716" "assign[] [GAO] an executive power").

53.    The Comptroller General also has the authority to "audit the financial transactions of each agency." 31 U.S.C. § 3523(a); *see id.* § 713(a) ("[T]he Comptroller General shall audit the Internal Revenue Service and the Tax and Trade Bureau, Department of the Treasury, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice of the Department of the Treasury [sic]"); *id.* § 714 (similar as to the Financial Institutions Examination Council, the Board of Governors of the Federal Reserve System, Federal reserve banks, the Federal Deposit Insurance Corporation, and the Office of the Comptroller of the Currency); *id.* § 715 (similar as to District of Columbia government)

54.    "The Comptroller General shall prescribe the accounting principles, standards, and requirements that the head of each executive agency shall observe. Before prescribing the principles, standards, and requirements, the Comptroller General shall consul with the Secretary of the Treasury and the President on their accounting, financial reporting, and budgetary needs, and shall consider the needs of the heads of the other executive agencies." 31 U.S.C. § 3511(a); *see also* 40 U.S.C. § 121(b)(1) ("The Comptroller General, after considering the needs and requirements of executive agencies, shall prescribe principles and standards of accounting for property."). The Comptroller General must "give the President information on expenditures and accounting the President requests." 31 U.S.C. § 719(f).

55.    Generally, "[t]he Secretary of the Treasury may pay out money only against a warrant," which "shall be" "countersigned by the Comptroller General." 31 U.S.C.A. § 3323(a).

56.    Similarly, the Comptroller General has the power to prescribe the procedures by which a contribution to the Civil Service Retirement and Disability Fund will be deposited. 5 U.S.C. § 8423(a)(4).

57.    These powers over auditing and financial procedures are executive.

58.    Next, "[t]he Comptroller General shall distribute to all departments of the Federal Government a list of the names of persons whom the Comptroller General has found to have disregarded their obligations to employees and subcontractors," and "[n]o contract shall be awarded to persons appearing on the list or to any firm, corporation, partnership, or association in which the persons have an interest until three years have elapsed from the date of publication of the list." 40 U.S.C. § 3144(b). This power over contracting is executive.

59.    Next, the Comptroller General can "conduct verification examinations with respect to the books, records, papers, or other documents of" private energy resources companies, including issuing subpoenas and entering business facilities. 42 U.S.C. §§ 6381–82. "Any person who violates any general or special order of the Comptroller General issued under" these provisions "may be assessed a civil penalty not to exceed $10,000 for each violation," and "[s]uch penalty shall be assessed by the Comptroller General and collected in a civil action brought by the Comptroller General." *Id.* § 6384(a). These too are executive powers.

16

60.    Along similar lines, the Comptroller General has extensive authority with respect to the Federal Energy Administration, an "an independent agency in the executive branch." 15 U.S.C. § 762. Not only shall the Comptroller General "monitor and evaluate the operations of the Administration," but he "may request access to any books, documents, papers, statistics, data, records, and information of any person owning or operating facilities or business premises who is engaged in any phase of energy supply or major energy consumption." 15 U.S.C. § 771(a)–(b). If a subpoena is issued for such material and disobeyed, he "may invoke the aid of any district court of the United States in requiring the production of the books, documents, papers, statistics, data, records, and information." *Id.* § 771(e).

61.    The Comptroller General can sue "any department, agency, officer, or employee of the United States" that impounds budget appropriations. 2 U.S.C. § 687. As discussed, the authority to bring such a judicial action is executive.

62.    These executive powers and duties do not represent the exercise of legislative power. And even "[e]xecutive action under legislatively delegated authority that might resemble 'legislative' action in some respects" remains *executive* action. *INS v. Chadha*, 462 U.S. 919, 954 n.18 (1983).

*GAO's Contrary Arguments are Unavailing*

63.    GAO's denial of AFL's FOIA appeal argued that "long-standing Supreme Court precedent conclude[d] that 'GAO is an independent agency within the legislative branch that exists in large part to serve the needs of Congress.'" Ex. 6, at 2 (quoting dicta in *Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 844 (1983)). The letter

17

also quoted the Supreme Court's decision in *Bowsher v. Synar*, 478 U.S. 714, 731–32 (1986), as stating, based on prior statutory history, that "Congress has consistently viewed the Comptroller General as an officer of the Legislative Branch." Ex. 6, at 2. In dicta, the D.C. Circuit has similarly said that "GAO is generally recognized as a part of the legislative branch" "and thus exempt from many APA provisions." *Chen v. GAO*, 821 F.2d 732, 737 n.6 (D.C. Cir. 1987); *see also Chennareddy v. Bowsher*, 935 F.2d 315, 319 (D.C. Cir. 1991) ("GAO is a legislative branch agency").

64.    These decisions did not address FOIA's applicability to GAO. Neither these decisions nor GAO addressed the textual definition within Title 5 of GAO as an "executive agency." 5 U.S.C. §§ 104, 105; *see Lawrence v. Staats*, 665 F.2d 1256, 1258 (D.C. Cir. 1981) ("GAO [i]s an executive agency under 5 U.S.C. § 105").

65.    Any suggestion that GAO is *not* subject to FOIA would seemingly require reading GAO as "the Congress" under 5 U.S.C. § 551(1). But it beggars belief that Congress would have expressly defined GAO as an "executive agency" "[f]or the purposes of" Title 5 (*id.* § 105) yet simultaneously have defined "the Congress" to include GAO. How can GAO be both an "executive agency" and "the Congress"? Even on the assumption that "the Congress" means "the entire legislative branch," *Washington Legal Foundation v. United States Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994), how can GAO be both an "executive agency" and part of "the legislative branch"? AFL knows of no precedent or explanation by GAO on this point. And the statute makes clear as day that, for Title 5 purposes, GAO is an "executive agency." As an "executive agency," GAO is an "authority of the Government of the

United States" rather than "the Congress." 5 U.S.C. § 551(1)(A). Thus, it is subject to the FOIA.

66.    What's more, even if GAO was somehow *not* "an authority of the Government of the United States" under § 551, § 552(f)(1) expands the definition of "agency" for FOIA purposes to any "any executive department, military department, Government corporation, Government controlled corporation, or *other establishment in the executive branch of the Government* (including the Executive Office of the President), *or any independent regulatory agency*." *Smithsonian*, 125 F.3d at 879 (emphases added); *see id.* ("[T]he additional language of § 552(f) was added to FOIA in 1974 to encompass entities that might have eluded the APA's definition in § 551(1)." (cleaned up)). Given Congress's definition of GAO as an "executive agency," it is hard to see how GAO could not qualify as an "establishment in the executive branch of the Government."

67.    The decisions cited by GAO also did not address the vast scope of executive powers wielded by GAO. Though the Supreme Court in *Synar* invalidated GAO's exercise of a narrow set of executive powers to determine "budget reductions," 478 U.S. at 733, it has many other executive powers, detailed above. As the Comptroller General himself has explained, the functions invalidated in *Synar* are "not unlike the auditing, account settlement, and certification functions he has long performed." *Synar* Brief, *supra*, at 44. "[M]any of the Comptroller General's determinations under the 1921 Act" and under current law "are expressly made binding on the executive departments" and private parties. *Id.* at 45. No binding

precedent appears to address the import of the GAO's substantial other executive powers, much less consider those powers in the context of FOIA. GAO is subject to the FOIA.

## CLAIM FOR RELIEF

### Violation of the FOIA, 5 U.S.C. § 552

68.    AFL repeats and reincorporates the preceding paragraphs.

69.    AFL properly requested records within the possession, custody, and control of the Defendant.

70.    The Defendant has failed to conduct a reasonable search for responsive records under the FOIA. Moreover, the Defendant failed to disclose any segregable, non-exempt portions of responsive records. *See* 5 U.S.C. § 552(b).

71.    The Defendant failed to respond to AFL's requests within the statutory time period. *See* 5 U.S.C. § 552(a)(6).

72.    Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(60(C).

73.    The Defendant has violated the FOIA by failing, within the prescribed time limit, to (i) reasonably search for records responsive to AFL's FOIA requests; (ii) provide a lawful reason for the withholding of any responsive records; and (iii) segregate exempt information in otherwise non-exempt responsive records.

## PRAYER FOR RELIEF

AFL respectfully requests this Court:

i.      Declare that the records sought by AFL's requests must be disclosed under 5 U.S.C. § 552;

ii.     Declare that GAO is an executive branch agency subject to the FOIA;

iii.    Order the Defendant to conduct FOIA-compliant searches immediately for all records responsive to AFL's FOIA requests and demonstrate that it employed search methods reasonably likely to lead to the discovery of responsive records;

iv.     Order the Defendant to produce by a specific date all non-exempt records responsive to AFL's FOIA requests;

v.      Award AFL attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E); and

vi.     Grant AFL such other and further relief as this Court deems proper.


Dated: March 6, 2025

                                    Respectfully submitted,

                                    */s/ Christopher Mills*

DANIEL EPSTEIN                      CHRISTOPHER MILLS
WILL SCOLINOS                       Spero Law LLC
America First Legal Foundation      557 East Bay St.
611 Pennsylvania Ave. SE #231       #22251
Washington, DC 20003                Charleston, SC 29413
(202) 964-3721                      (843) 606-040
daniel.epstein@aflegal.org          cmills@spero.law

        *Counsel for Plaintiff America First Legal Foundation*