

July 12, 2024

Honorable Gene Dodaro
Comptroller General
U.S. Government Accountability Office
441 G Street, NW
Washington, DC 20548
E-mail: recordsrequest@gao.gov

**Freedom of Information Act Appeal: Request # PRI-23-127**

Dear Comptroller General Dodaro:

This is an appeal from GAO's May 15, 2024, determination.[1]

On March 23, 2023, America First Legal Foundation (AFL) submitted a request for documents under the Freedom of Information Act (FOIA) to the Government Accountability Office (GAO) and requested a fee waiver.[2] This request was assigned identification number PRI-23-127. In a letter dated May 15, 2024, GAO denied AFL's FOIA request, stating that "As an agency responsible to the Congress, GAO is not subject to the Freedom of Information Act."[3] Further, in regard to items 1, 2, and 8, the denial letter stated GAO does not release agency memoranda, letters, or internal communications, pursuant to 4 C.F.R. § 81.6(j). Because GAO is an executive agency subject to FOIA, AFL appeals.

As detailed below, GAO's contention that it is a legislative agency not subject to FOIA lacks merit. FOIA explicitly applies to each authority of the United States Government, including GAO. Additionally, GAO's authority and responsibilities indicate it has executive duties. GAO's officers are also appointed by the President with the advice and consent of the Senate. Thus, FOIA requires record disclosure from GAO.

---

[1] *See* Exhibit 1, attached.
[2] *See* Exhibit 2, attached.
[3] Exhibit 1, *infra*.

## I.    GAO is subject to the Freedom of Information Act

GAO's contention that it is not subject to FOIA fails for multiple reasons. First, GAO is an independent establishment, making it an executive agency and subject to FOIA. Second, GAO's responsibilities and granted authorities as a regulatory agency also subject it to FOIA. Third, GAO's officers are appointed by the President and confirmed by the Senate, a requirement imposed on the heads of all executive agencies by Article II of the Constitution but clearly not legislative officers. Fourth, GAO's functions and the duties imposed upon it clearly fall within the executive branch. Finally, statutory text directs public disclosure of records from GAO.

### A.    GAO is an independent establishment

For purposes of FOIA, the definition of "agency" is broad and intended to encompass most authorities of the Government of the United States in order to ensure transparency and accountability.[4] GAO "is an instrumentality of the United States Government independent of the executive *departments*,"[5] but it is not independent of the executive *branch*. Rather, GAO is an "independent establishment,"[6] which is a type of "agency,"[7] thus subjecting it to FOIA.

#### 1.  Definitions

5 U.S.C. § 104(2), which defines "independent establishments," specifically identifies GAO as an independent establishment. The issue is whether an "independent establishment" constitutes an agency for purposes of the scope of the Freedom of Information Act. This issue is easily resolved, for GAO's organic statute defines an "agency" as any "establishment of the Government."

#### 2.  Expanding on the definition of "agency"

As discussed above, the definition of "agency" in 5 U.S.C. § 551 includes each authority of the United States Government. It expands the scope of the meaning of "agency" by also including U.S. Government entities "whether or not it is within or subject to review by another agency."[8] The significance of this elaboration is that it is being used synonymously with the term "independent establishment." Independent establishments are the authorities of the Government of the United States which would not be subject to review by another agency yet are still subject to FOIA.[9] Thus, the importance of understanding the reach of FOIA's requirement of agency

---

[4] *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989).
[5] 31 U.S.C. § 702(a) (emphasis added).
[6] 5 U.S.C. § 104(2).
[7] 31 U.S.C. § 101.
[8] 5 U.S.C. § 551(1).
[9] 5 U.S.C. § 551(1); 5 U.S.C. § 552.

disclosure lies in the meaning of "independent establishment." Notably, 5 U.S.C. § 104(2) provides that GAO is an "independent establishment." Further, section 104 states GAO's inclusion as an independent establishment is to be used throughout the entirety of Title 5 of the United States Code, including sections 551 and 552, the FOIA.[10] Therefore, GAO, as an independent establishment is within Title 5's definition of an agency and must abide by FOIA requirements.

### 3. GAO is an establishment within the executive branch

The relevant statutory text, found in U.S. Code Title 31, Chapter 7, does not support GAO's contention that it is exempt from FOIA. 31 U.S.C. § 702(a) provides that GAO "is an instrumentality of the United States Government independent of the executive departments." It does not state that GAO is "an agency responsible to the Congress" nor specify that GAO is something other than an establishment in the executive branch. Rather, 31 U.S.C. § 702(a) comports with 5 U.S.C. § 104(2),[11] as both define GAO not as an executive department itself, but rather as an establishment within the executive branch. In this sense, and consistent with how the Supreme Court has concluded that independent agencies like the Securities and Exchange Commission[12] or the Consumer Financial Protection Bureau[13] are executive branch agencies, GAO would fit within such a classification.

31 U.S.C. § 702 accomplishes two notable acts. First, it creates GAO as an office, and second, the Comptroller General of the United States is designated to serve as its head.[14] The preceding section, 31 U.S.C. § 701, explicitly precludes the "legislative branch" and the "Supreme Court" in its definition of an agency for purposes of the chapter. Relevant here, the subchapter creates GAO—an authority of the United States Government—while also excluding all agencies referred to in the chapter from falling within the legislative branch or the Supreme Court.

Congress' addition of section 701, precluding agencies from being considered part of the legislative branch, signifies that the creation of GAO is not intended to be one of a legislative agency. As the Supreme Court has opined, Congress does not "hide elephants in mouseholes" when developing statutory schemes.[15] To analyze GAO to be "an agency responsible to the Congress" would be contrary to section 701's declaration. Thus, GAO is an independent establishment within the executive branch

---

[10] 5 U.S.C. § 104(2).

[11] 5 U.S.C. §104 (defining an independent establishment as an establishment in the executive branch which is not an Executive department); 31 U.S.C. § 702 (defining GAO as an instrumentality independent of the executive departments).

[12] *Jarkesy v. S.E.C.*, 803 F.3d 9, 12 (D.C. Cir. 2015).

[13] *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020).

[14] 31 U.S.C. § 702.

[15] *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001).

and any other interpretation would have sections 701 and 702 blatantly contradict each other.

### 4. Significance of statutory terminology

The use of the words "legislative branch" in the exclusion of what constitutes an agency in 31 U.S.C. § 701 is significant because GAO was defined as an establishment of the United States Government independent of the "executive departments."[16] An "executive department" is a starkly different entity or government instrumentality from the entire "legislative branch." 31 U.S.C. § 6401(4) gives an "executive department" the same meaning as in 5 U.S.C. § 101, which lists the U.S. Executive Departments. However, 31 U.S.C. § 3701(a)(4) provides that a legislative agency is any "department, agency, court, court administrative office, or instrumentality in the … legislative branch of Government." Thus, sections 6401 and 3701 of Title 31 plainly differentiate a "branch of government" from a "department within one of the branches of government."

While GAO is "independent of the executive *departments*," nowhere does the statute state that GAO is independent of the executive *branch*.[17] Moreover, GAO is expressly not within the legislative branch.[18] Thus, despite GAO being independent of executive departments, it is nonetheless an independent establishment within the executive branch, and entirely prohibited from being an agency responsible to the Congress.[19]

### B. GAO, unlike Congress, administers the law

Section 309 of the Budget and Accounting Act of 1921 states the "Comptroller General shall prescribe the forms, systems, and procedure for administrative appropriation and fund accounting in the several departments and establishments, and for the administrative examination of fiscal officers' accounts and claims against the United States." Even if GAO was not an executive establishment, it is clearly given functions to act as a regulatory agency which are subject to FOIA.

The Comptroller General "shall make such rules and regulations as may be necessary for carrying on the work of [GAO], including rules and regulations concerning the admissions of attorneys to practice before such office."[20] Additionally, he also "shall investigate … all matters relating to the receipt, disbursement, and application of public funds.[21] Such responsibilities deal with the enforcement of law, promulgation of regulations, and management and administration of agencies—all of which are

---

[16] 31 U.S.C. § 702.
[17] *Id.*
[18] 31 U.S.C. § 701.
[19] 31 U.S.C. §701(a); 5 U.S.C. § 501(1)(a).
[20] Budget and Accounting Act of 1921 Sec. 311(f).
[21] Budget and Accounting Act of 1921 Sec. 312(a).

executive branch duties. Even when such duties have been found to belong to an agency outside of the executive branch, an establishment engaging in such activity has been found to be subject to FOIA.[22]

Further, 31 U.S.C. § 732(f)(2)(A)–(B) grants GAO's Personal Appeals Board "the same authority over oversight and appeals matters" and the Comptroller General "the same authority over matters" as an executive agency. Thus, GAO is being treated as an executive establishment. Additionally, 31 U.S.C. § 752 makes the Chairman of GAO's Personnel Appeals Board a chief executive and administrative officer of the Board. These all are administrative functions of a regulatory agency, further subjecting GAO to FOIA.

### C.    GAO appointments and removals

31 U.S.C. § 703(a)(1) provides that the Comptroller General and Deputy Comptroller General are appointed by the President, by and with the advice and consent of the Senate. Further, their pay is also equal to the pay rate of level II and level III officers of the Executive Schedule, indicating they are executive officers themselves.[23] The Comptroller General is also given the authority to appoint officers in his place when absent or unable to serve.[24] Relevant here is the ability to designate an "officer." As well established, Article II's Appointments Clause confers the President the power to appoint and remove all "officers established by Law."[25]

Relying expressly upon *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court has held that "Congress cannot reserve for itself the power of removal of an officer charged with the execution of the laws except by impeachment." *Bowsher v. Synar*, 478 U.S. 714 (1986). The Supreme Court clearly reaffirmed that all officers of the United States are to be appointed by the President; this also applies to all members of a typical administrative agency.[26] The Court has also noted that even when an administrative agency may be "predominantly quasi-judicial and quasi-legislative rather than executive" and "the members of such agencies [are] to be independent of the Executive in their day-to-day operations," the President still

---

[22] OPM.gov, U.S. OFF. PERS. MGMT, https://bit.ly/3xSJRGF (explaining the OPM is responsible for setting and enforcing background-check processes for federal employees, providing human resource services, policies, and oversight to federal agencies, and developing and administering employee benefit programs); *see Evans v. U.S. Off. Pers. Mgmt.*, 276 F. Supp. 2d 34 (D.D.C. 2003).
[23] 31 U.S.C. § 703(f).
[24] 31 U.S.C. § 703(d).
[25] U.S. CONST. art. II, § 2, cl. 2.
[26] *Buckley v. Valeo*, 424 U.S. 1, 132 (1976).

nonetheless has the power of appointment.[27] Additionally, courts have found significance in Congress' decision to require Senate confirmation of heads of offices.[28]

Here, as a matter of law, GAO functions as a part of the executive branch with clear and substantial independent authority. To begin with, the Comptroller General and his Deputy are both executive officers. Each is appointed by the President, with Senate consent, and therefore subject to the President's at-will removal power.[29] Although Congress has "established by legislation the terms for tenure and removal" of the Comptroller General and his Deputy,[30] 31 U.S.C. § 703(e) authorizes impeachment. Under Article II, § 4, impeachment is for removing "civil officers"—historically understood to mean executive officers, not legislative ones.[31] Indeed, if the Comptroller General was considered a legislative officer, then that would open the door to claims that other legislative officers, like Members of Congress, could be removed through impeachment.

Further, in *United States v. Eaton*, 169 U.S. 331 (1898), the Supreme Court "approved Department of State regulations that allowed executive officials to appoint a 'vice-consul' during the temporary absence of the consul."[32] This indicates that the power of officer appointment still remains with the President, but executive officials may temporarily appoint a vice-consul in their absence. Similarly, GAO's head of office, the Comptroller General is given the authority to appoint an officer in his place during his absence.[33] Such power solely belongs to the President and his executive officials.

Finally, the Supreme Court has stated "The bite in the phrase 'final action' is not in the word 'action,' which is meant to cover comprehensively every manner in which an agency may exercise its power. It is rather in the word 'final' which requires that the action under review 'mark the consummation of the agency's decisionmaking process."[34] Significant to our case, all "balances certified by the Comptroller General shall be final and conclusive upon the executive branch of the Government."[35] Thus, the Comptroller General's "final action" is consummated by the President, indicating its characterization as an executive unit.

---

[27] *Id.* (citing *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935)).

[28] *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978) ("Congress signified the importance of OMB's power and function, over and above its role as presidential advisor, when it provided,g also by amendment in 1974, for Senate confirmation of the Director and Deputy Director of OMB.").

[29] 31 U.S.C. § 703(a)(1); *Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021).

[30] *Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983).

[31] Asher C. Hinds, *Hinds' Precedents of the House of Representatives of the United States* §§ 2444–68 (1907), https://bit.ly/3FJRYp0.

[32] *Morrison v. Olson*, 487 U.S. 654, 672–673 (1988).

[33] 31 U.S.C. § 703(d).

[34] *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).

[35] Budget and Accounting Act of 1921, Pub. L. No. 67-13, § 304 (1921).

### D.     GAO's executive duties

GAO is granted numerous duties and responsibilities that represent executive functions, thus further proving it falls within the executive branch.

#### 1.     Discretion and authority independent of Congress

15 U.S.C. § 771(a) provides that the Comptroller General "shall report to the Congress at such times as he deems appropriate with respect to the Administration's program." The "Administration" referred to is the Federal Energy Administration and Congress clearly stated it solely intended "to create an administration in the executive branch" and "to transfer to such Administration certain executive branch functions authorized by other laws."[36] GAO's duty to oversee operations over another executive agency indicates GAO itself was intended to fall within the executive branch. Additionally, the language "shall report … as he deems appropriate" gives the Comptroller General authority and discretion independent of Congress, also pointing towards GAO being an executive establishment meant to assist the President in the management and administration of those within the executive branch.[37]

#### 2.     Investigation of criminal matters

31 U.S.C. § 705 creates an independent Inspector General to audit and oversee the agency's activities. GAO's Inspector General reports directly to the United States Attorney General, an executive officer, whenever he has reasonable grounds to believe there has been a violation of Federal criminal law.[38] It also "may receive, review, and investigate, as the Inspector General considers appropriate, complaints or information from an employee of the Government Accountability Office concerning the possible existence of an activity constituting a violation of any law, rule, or regulation, mismanagement, or a gross waste of funds." 31 U.S.C. § 705(d)(1).

The landmark Supreme Court case, *McGrain v. Daugherty*, established that congressional committees can only investigate matters in which Congress can validly legislate,[39] but here, GAO's Inspector General is given the power to investigate criminal matters—a power clearly beyond Congress's jurisdiction—thus revealing GAO's nature as an executive establishment acting to enforce the law.

#### 3.     Absorption of executive offices and responsibilities

Section 304 of the Budget and Accounting Act of 1921, the same section that created GAO, also created the Bureau of Accounts for administrative examination of the accounts and vouchers of the Post Office Department and states that it shall be under

---

[36] 15 U.S.C. § 761(c).
[37] 15 U.S.C. § 771(a).
[38] 31 U.S.C. § 705(c)(7).
[39] *McGrain v. Daugherty*, 273 U.S. 135 (1927).

the direction of a Comptroller. Further, section 304 vested GAO with the previous duties of the Comptroller of the Treasury, the six auditors of the Treasury Department, and the Division of Bookkeeping and Warrants of the Office of the Secretary of the Treasury. Accordingly, section 310 abolished the offices of the six auditors and provided that all "officers and employees of these offices … shall become officers and employees of [GAO]."[40] It is well established that the United States Treasury is an executive agency and that the Post Office Department is an establishment within the executive branch. The acquisition by the Comptroller General and GAO of both Treasury and Post Office employees and duties is indicative that it also falls within the executive branch, thus making it subject to FOIA.

Equally important, section 317 of the Budget and Accounting Act of 1921 states "The provisions of law prohibiting the transfer of employees of executive departments and independent establishments until after service of three years shall not apply during the fiscal year ending June 30, 1922, to the transfer of employees to [GAO]." As discussed above, in the creation of GAO, other offices within the Post Office Department and U.S. Treasury were abolished, and such officers became officers of GAO.[41] Absent this exemption, employees of executive departments and independent establishments would be prohibited from transferring into GAO. The need to create this exemption signals that GAO is an independent establishment within the executive branch, otherwise, the exemption need not be created as it only pertains to employees of the executive branch.

### 4.    Bringing civil actions

Finally, 31 U.S.C. § 716(b)(2) permits the Comptroller General, through a designated attorney, to bring civil actions in the U.S. District Court for the District of Columbia to require the heads of agencies to produce records. "Congressional agencies" such as committees cannot independently bring civil enforcement actions in the federal courts without typically issuing a subpoena, exhausting an interbranch accommodations process,[42] issuing contempt and then making a referral to the Department of Justice—all of which must pass muster through committee and floor votes. handlike GAO, executive agencies frequently bring civil actions in Article III courts. Here, the statute gives the head of GAO the power to independently—without any interbranch exhaustion procedures or cameral votes—bring civil actions in a district court, thus showing an intent for it to be considered an executive establishment.

---

[40] Budget and Accounting Act of 1921, Pub. L. No. 67-13, § 310 (1921).

[41] *Id.*

[42] *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 130 (D.C. Cir. 1977).

### E.     Statutory requirements

15 U.S.C. § 771(f) provides "Reports … shall be available to the public at reasonable cost and upon identifiable request." The statute clearly requires the publication of GAO's records with the exception that some documents may be disclosed in a manner designed to preserve confidentiality.

As mentioned above, the Comptroller General submits findings and reports as the head of GAO, and accordingly is subject to "all laws generally related to administering an agency."[43] Particularly relevant is 5 U.S.C. § 552(f)(1), which again states, among other things related to the executive branch, that an "agency" for purposes of FOIA would also be any establishment in the executive branch. Moreover, FOIA is certainly a law "generally related to administering an agency" of the United States government. Thus, the application of FOIA to the Comptroller General and GAO is required by statute, as they are subject to all other laws pertaining to agency administration.

Further, 31 U.S.C. § 704(b) designates records under the Comptroller General's seal to be comparable to those listed in the statute referenced in subsection (b), which pertains to "Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States." Although 5 U.S.C. § 552 deals with records for public disclosure and 31 U.S.C. § 704(b) deals with records being admissible as evidence, the preceding subsection in 31 U.S.C. § 704(a) stating that it should be treated similarly and follow the same rules as agencies and departments of the United States suggests that GAO's records and documents are also subject to rules set forth by other laws.

Additionally, all "balances certified by the Comptroller General shall be final and conclusive upon the executive branch of the Government."[44] Required approval for the finality of financial matters subject to the President's authority once again indicates it is an executive establishment.

### F.     Executive exchange program

The Comptroller General is permitted to "establish an executive exchange program under which officers and employees of the Office may be assigned to private sector organizations, and employees of private sector organizations may be assigned to the Office."[45] Employees in the private sector organization assigned to GAO under this program are considered GAO employees for purposes of chapter 73 of Title 5 in the United States Code.[46] Significantly, 5 U.S.C. § 7322 states an "'employee' means any

---

[43] 31 U.S.C. § 704(a).
[44] Budget and Accounting Act of 1921, Pub. L. No. 67-13, § 304 (1921).
[45] 31 U.S.C. § 731(h).
[46] 31 U.S.C. § 731(i).

individual, other than the President and the Vice President, employed or holding office in—an Executive agency other than [GAO]; or a position within the competitive service which is not in an Executive agency." Further, competitive service positions consist of "all civil service positions in the executive branch."[47] Here, the individuals within the competitive service—positions within the executive branch—enter into the executive exchange program and begin working for GAO as employees. Therefore, many of GAO's employees are executive branch employees, indicating GAO itself falls within the executive branch.

### G.    Personnel management system

The Comptroller General is required to "maintain a personnel management system" and may prescribe regulations about the system, but only "after notice and opportunity for public comment."[48] Similarly, the APA requires agencies to provide public notice and comment.[49] Generally, the APA only applies to executive agencies as legislative agencies do not create regulations—they merely provide support to Congress.[50] Congress need not provide notice or opportunity for public comment before enacting legislation; thus, neither do its agencies to whom Congress has delegated its powers.[51] Because the Comptroller General has the power to create regulations and is bound by the notice and comment requirements, GAO carries out executive functions.

Additionally, the personnel management system shall "give a preference to an individual eligible for a preference in the executive branch of the United States Government in a way and to an extent consistent with a preference given an individual in the executive branch."[52] A required preference regarding hiring, appointing, and assigning individuals within the executive branch indicates that GAO also assists the President in carrying out executive duties.

The personnel management system was created to further GAO duties and 31 U.S.C. § 732(d)(1) states that it shall provide for a system to appraise the performance of officers and employees of GAO and include a "link between the performance management system and the agency's strategic plan." As plainly stated in the statute's language, GAO is considered an agency. Moreover, the personnel management system must "include a minority recruitment program consistent with section 7201 of title 5."[53] Notably, 5 U.S.C. § 7201 applies to all "Executive agencies."

---

[47] 5 U.S.C. § 2102.
[48] 31 U.S.C. § 732.
[49] 5 U.S.C. § 553.
[50] 5 U.S.C. §§ 551–59 (Administrative Procedure Act).
[51] U.S. CONST. art. I, § 7, cl. 3.
[52] 31 U.S.C. § 732(b)(5).
[53] Budget and Accounting Act of 1921 § 3(g)(2).

Thus, the statute expressly stating that GAO must abide by the same requirements indicates it is also an executive agency.

## H.    Personnel Appeals Board

The personnel management system ensures that personnel actions are not taken in regard to race, sex, religion, or political affiliation,[54] and a right exists to appeal these actions to the General Accounting Office Personnel Appeals Board.[55] Significantly, a "final decision by the General Accounting Office Personnel Appeals Board may be reviewed by the United States Court of Appeals for the Federal Circuit."[56] Typically, cases must first be filed in a federal district court, but here, decisions by GAO's Appeals Board are directly appealed to a federal circuit court.[57] Direct appeals to a federal circuit court are generally only permitted through statutory authorization for decisions within certain agencies, such as the Merit Systems Protection Board, Federal Communications Commission, Federal Trade Commission, Environmental Protection Agency, or the National Labor Relations Board—such decisions that are directly appealed to the federal circuit are made by agencies considered independent federal regulatory agencies and thus are all subject to FOIA.[58] Because the GAO's decisions may be appealed directly to the federal circuit, it is an independent regulatory agency subject to FOIA.

Moreover, the GAO Personnel Appeals Board has the power over all oversight and appeals relating to discrimination in employment, and the Comptroller General has the power over all other responsibilities.[59] The Budget and Accounting Act expressly states that nothing in the Act shall "diminish or abolish any right or remedy" granted to employees or applicants of GAO, except that of independent oversight on discrimination claims.[60] Thus, the Act limits the authority of "the Equal Employment Opportunity Commission, Office of Personnel Management, the Merit Systems Protection Board, [and] any other agency in the executive branch" and grants such authorities to the GAO instead.[61] Because this prescription of authority includes enforcement of federal laws and regulations, the GAO is acting with executive functions and powers.

---

[54] 31 U.S.C. § 732(f)(1)(A).

[55] 31 U.S.C. § 732(h)(2)(A).

[56] 31 U.S.C. § 732(h)(2)(B).

[57] 28 U.S.C. § 1295(a)(1).

[58] 5 U.S.C. §§ 702–06.

[59] Budget and Accounting Act of 1921 §§ 3(g)(3)(A)–(B).

[60] Budget and Accounting Act of 1921 § 3(g)(3).

[61] *Id.*

## II.    Case law

Statutory text refutes GAO's contention that FOIA does not apply. Therefore, it must contend that it is impliedly exempt from FOIA. Case law, however, forecloses any such implication.

### A.    FOIA's purpose

Congress' intent when enacting FOIA was "to implement a general philosophy of full agency disclosure."[62] The FOIA amended the APA's section on public disclosure because it was viewed as falling short of those goals.[63] Thus, FOIA is without question, broadly conceived, and seeks to "permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands."[64] Congress itself has instructed that "success lies in providing a workable formula that encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure."[65]

Here, Congress' goals of public disclosure would once again be falling short if it permitted GAO to be impliedly exempt from FOIA's application. GAO is not listed as one of the entities which is exempt from public disclosure under 5 U.S.C. § 551, nor do any of its functions meet any of the established exemptions that would impede its ability to fulfill its responsibilities.

### B.    Organization of government function

"The court has long recognized that the organization of governmental functions is of significance for the purposes of FOIA."[66] In *Ryan v. Department of Justice*, 617 F.2d 781, 789 (D.C. Cir. 1980), the court found that many cabinet officers "act as advisors to the President for many of their important functions; yet they are not members of the presidential staff or exclusively presidential advisors, and are thus not exempt from FOIA requirements." It further went on to hold that "Any unit or official that is part of an agency and has non-advisory functions cannot be considered a non-agency in selected contexts on a case-by-case basis."[67] In *Ryan*, the court analyzed the

---

[62] *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1112 (D.C. Cir. 2004) (citing *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989)).

[63] *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1112 (D.C. Cir. 2004) (citing *EPA v. Mink,* 410 U.S. 73, 79 (1973)).

[64] *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (citing *EPA v. Mink*, 410 U.S. 73, 80 (1973)).

[65] S. Rep. No. 813, p. 3, *quoted in EPA v. Mink*, 410 U.S. 73, 80 (1973).

[66] *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1118 (D.C. Cir. 2004).

[67] *Ryan v. U.S. Dep't of Just.*, 617 F.2d 781, 789 (D.C. Cir. 1980) (finding also that "Once a unit is found to be an agency, this determination will not vary according to its specific function in each individual case.").

President's choice between using his staff or an agency to perform a function and found the choice to be "unavoidably significant for FOIA purposes, because the Act defines agencies as subject to disclosure and presidential staff as exempt. To redraw this statutory line in a different manner, based on complex functional considerations, would strain the language of the Act and present much greater complexity in litigation."[68]

### 1. Court's determination

It has been well established "it is the duty of the courts to interpret the statute under which the agency functions and to determine whether the agency is acting within the congressional purpose" and "an agency's voluntary self-denial has no bearing upon the answer."[69] Therefore, it is not for GAO to determine whether its functions subject it to FOIA, rather it is the duty of the court to make such a finding.[70]

### 2. Substantial independent authority

To determine whether an entity is an agency subject to FOIA, courts must distinguish between advising and assisting, and exercising independent authority, thus questioning the generality of the goal sought to be achieved; "the more general the goal the greater the likelihood that the responsible entity is vested with some element of discretion and is not just advising or assisting."[71]

To assist the court in this determination, the court used a three-factor test to harmonize the "sole function" and the "substantial independent authority" criteria; the three factors being: (1) how close operationally the group is to the President, (2) whether it has a self-contained structure, and (3) the nature of its delegated authority.[72] This test is relevant to "determining whether those who both advise the President and supervise others in the Executive Branch exercise 'substantial independent authority' and hence should be deemed an agency subject to the FOIA."[73] In making such a test, the court looked to *Meyer* and *Soucie*, where it found the President's Task Force on Regulatory Relief did not constitute an agency despite evaluating agency regulatory efforts because it inferred that Congress intended the phrase "solely to advise and assist the president" to refer to "entities whose

---

[68] *Id.*

[69] *Frank Irey, Jr., Inc. v. Occupational Safety & Health Rev. Com.*, 519 F.2d 1200, 1206 (3d Cir. 1974); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 473 (2001).

[70] *Loper Bright Enters. v. Raimondo*, No. 22-451, 2024 U.S. LEXIS 2882, at *36 (June 28, 2024).

[71] *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 564–65 (D.C. Cir. 1996).

[72] *Id.* at 558 (citing *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993)).

[73] *Id.*

characteristics and functions were similar to those of the president's immediate personal staff."[74]

Courts also have recognized the problem of "dual-hat" advisors who perform other functions aside from serving as advisors, but nonetheless have ruled that employees, for example, the Attorney General, as head of the Justice Department, "cannot be treated as a non-agency exempt from the FOIA" when engaging in his or her advisory functions.[75] The court made its finding based on the Department's historical position and the underlying public interest because "the public's right to know how its government is conducting its business has long been an enduring and cherished value."[76]

The question whether GAO is "Congress enough" to evade FOIA parallels the question whether an agency within the Executive Office of the President is "President enough" to evade FOIA.[77] The Supreme Court, in deciding which agencies within the Executive Office of the President are FOIA exempt, excluded only "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President[.]"[78] In the congressional context, this equates to the Members' personal staff and Committee staff, not GAO. The D.C. Circuit further refined the Supreme Court doctrine, holding that an agency within the Executive Office of the President was subject to FOIA if it exercised substantial independent authority.[79]

Here, GAO evidently has substantial independent authority. First, the Comptroller General has authority to require access to information from the executive branch about the "duties, powers, activities, organization and financial transactions of the agency" independent of congressional authorization.[80] Second, whenever an executive branch agency does not comply with a request for information within a reasonable time period, the Comptroller General may, without the need for congressional approval, bring civil litigation to require the production of records.[81] Third, the Comptroller General may subpoena records from private individuals without congressional review and approval.[82] Fourth, the Comptroller General, again without congressional approval, may bring civil litigation to compel compliance with his

---

[74] *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (citing *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993); *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971)).
[75] *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1120 (D.C. Cir. 2004).
[76] *Id.* at 1121–22.
[77] *See Citizens for Responsibility and Ethics in Washington v. Off. Admi.*, 566 F.3d 219, 222–23 (D.C. Cir. 2009) (collecting relevant cases).
[78] *Kissinger v. Reports Comm. For Freedom of the Press*, 445 U.S. 136, 156 (1980).
[79] *Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993).
[80] 31 U.S.C. § 716(a)(2).
[81] 31 U.S.C. §§ 716(a)(1), (b)(2).
[82] 31 U.S.C. § 716(c)(1).

subpoena requests.[83] Fifth, and most devastating to the notion that the Comptroller General is in any way the alter ego of Congress, Congress specifically enumerated that none of the Comptroller General's vast powers "authorize information to be withheld from Congress."[84] If the Comptroller General's sole function was to advise and assist Congress there would be no need to enumerate its lack of authorization to withhold information it obtained from Congress. Sixth, GAO has adjudicatory authority to review collateral protests to successful federal contract bids.[85]

Examples of the court's inclusion of an entity as an agency subject to FOIA include: the Council on Environmental Quality "because of its independent authority to 'issue guidelines to federal agencies,' 'coordinate federal programs,' and oversee certain activities of other federal agencies;" the Office of Science and Technology "notwithstanding its proximity to the President, because it has independent authority to evaluate federal scientific programs, initiate and support research, and award scholarships;" and the Office of Management and Budget because it has a statutory duty to provide budget information to the Congress which is an "instrument of presidential policymaking and control over the executive bureaucracy."[86]

In contrast, the Council of Economic Advisers is not a FOIA agency because it has no regulatory power or other functions, nor is the Executive Residence because their duty to manage the President's home is subject to discretion and approval, without the delegation of substantial independent authority.[87]

As mentioned above, GAO and the Comptroller General have the authority to issues rules and regulations as may be necessary for carrying on the work of GAO and create the procedure for administrative appropriation and fund accounting in the several departments and establishments. GAO's duties closely resemble those of other establishments that have been determined to be agencies subject to FOIA, as opposed to requiring approval before using its own independent discretion.

## C. Constitutional considerations

"The fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution, for convenience and efficiency are not the primary objectives—or

---

[83] 31 U.S.C. § 716(c)(2).

[84] 31 U.S.C. § 716(e)(3).

[85] 31 U.S.C. §§ 3551–3557 (as part of the Competition in Contracting Act).

[86] *Armstrong v. Exec Off. of the President*, 90 F.3d 553, 559 (D.C. Cir. 1996); *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978).

[87] *Armstrong v. Exec Off. of the President*, 90 F.3d 553, 559 (D.C. Cir. 1996).

the hallmarks—of democratic government . . . . Our Constitution was adopted to enable the people to govern themselves, through their elected leaders."[88]

The Supreme Court has noted the debates of the Constitutional Convention and the Federalist Papers "are replete with expressions of fear that the Legislative Branch of the National Government will aggrandize itself at the expense of the other two branches."[89] In response to such fears, the Court expressly declared that "the hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted."[90]

Here, that is exactly what GAO is attempting to succeed in doing. It seeks to hide under the guise of belonging to Congress, when there is no such evidence to show it is. Both statutory text and case law overwhelmingly support a finding that it is an agency within the Executive branch. Further, it has been well established time and time again that FOIA seeks transparency of all government agencies, and GAO is not exempt from accountability by the public.

## III.    GAO's regulations cannot apply to this request

31 U.S.C. § 711 is the cited authority for 4 C.F.R. Part 81.[91] However, this statute authorizes the Comptroller General to prescribe regulations only "to carry out [his] duties and powers." Public disclosure is not an enumerated duty or power.[92] Paradoxically, if the Comptroller General has the lawful power and discretion to regulate in the outer penumbra of his statutory authorization, and issue 4 C.F.R. Part 81, then the notion that he is merely a creature of Congress falls away. 4 C.F.R. Part 81 is *ultra vires* and GAO should not be afforded deference.[93]

## IV.    Conclusion

For these reasons, GAO is subject to FOIA. Thank you for your consideration of this appeal.

Sincerely,

/s/ Michael Ding
America First Legal Foundation

---

[88] *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010) (internal quotations omitted).
[89] *Buckley* v. *Valeo*, 424 U.S. 1, 129 (1976).
[90] *Bowsher v. Synar*, 478 U.S. 714, 726–727 (citing *Ins v. Chadha*, 462 U.S. 919 (1983)).
[91] 68 Fed. Reg. 33832 (June 6, 2003).
[92] *See* 31 U.S.C. Chapter 7.
[93] *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

# Exhibit 1

# GAO' response to your reequest

## Minor, Francis A <MinorF@gao.gov>

Wed 5/15/2024 4:37 PM

To:AFL FOIA <foia@aflegal.org>

📎 1 attachments (180 KB)

4 CFR PART 81 REGULATIONS.pdf;

Exhibit 1

PRI-23-127

Reed D. Rubinstein
611 Pennsylvania Avenue, SE
Unit 231
Washington, DC  20003

Dear Reed Rubinstein:

On behalf of the Chief Quality Officer, this email responds to your March 23, 2023,
request for the following, related to the Government Accountability Office (GAO)
report entitled <u>UNACCOMPANIED CHILDREN: Actions Needed to Improve Grant
Application Reviews and Oversight of Care Facilities</u> (GAO-20-609, Sep. 15, 2020):

> (1) All communications with Representative Rosa DeLauro or her
> committee staff. The timeframe for this request is January 4, 2020, to
> the date that this request is fulfilled.

> (2) All internal GAO communications related to the communications in
> request #1.

> (3) All communications between GAO and Congress relating to
> evidence of, reports involving, or complaints about, sex trafficking or
> human trafficking of unaccompanied alien children that involve the U.S.
> Department of Health and Human Services Office of Refugee
> Resettlement ("ORR") or any grantees of ORR. The timeframe for this
> request is January 4, 2020,to the date that this request is fulfilled.

> (4) All communications between GAO and Congress relating to
> evidence of, reports involving, or complaints about ORR placing
> unaccompanied alien children with sponsors who have not been
> properly vetted or about ORR using grantees that do not properly vet
> UAC sponsors.

> (5) All internal GAO communications or documents related to the
> communications in request numbers 3 and 4.

> (6) All communications with the Council of Inspectors General for
> Integrity and Efficiency, or with the HHS Inspector General, relating to
> the activities listed above in request numbers 3 and 4. The timeframe for
> this request is January 4, 2020 to the date that this request is fulfilled.

> (7) All internal GAO communications or documents related to the
> communications listed in request #5.

> (8) All records regarding the processing of this request.

As an agency responsible to the Congress, GAO is not subject to the Freedom of
Information Act.  However, GAO's disclosure policy follows the spirit of the act

consistent with GAO's duties and functions as an agency with primary responsibility to the Congress. Attached for your information is a copy of our regulations concerning the availability of GAO records to the public, which are contained in 4 C.F.R. Part 81.

Regarding items 1, 2, and 8 GAO does not release these types of communications or records pursuant to 4 CFR Section 81.6 (j) "Inter-agency or intra-agency memoranda, letters, or other materials that are part of the deliberative process" For example, this exemption includes internal communications such as GAO or other agency draft reports, and those portions of internal drafts, memoranda and workpapers containing opinions, recommendations, advice, or evaluative remarks of GAO employees. This exemption seeks to avoid the inhibiting of internal communications, and the premature disclosure of documents which would be detrimental to an agency decision making. As it relates to items 3 and 4, we have searched our files and found no responsive GAO records related to your request. Our research team could only locate public news reports related to trafficking of unaccompanied children. Thus, GAO has no responsive records related to item 5, 6, and 7.

Finally, in accordance with 4 C.F.R. § 81.4(d), you may notify the requester that further consideration of the request—to the extent that it has been denied—may be obtained by an appeal letter to the Comptroller General of the United States at 441 G Street, NW; Washington, DC 20548, setting forth the basis for the belief that the partial denial of the request is unwarranted.

Sincerely yours,

Francis A. Minor
Government Information Specialist,
U.S. Government Accountability Office
Audit Policy & Quality Assurance
441 G Street, NW
Washington, DC  20548

---

**From:** AFL FOIA <foia@aflegal.org>
**Sent:** Thursday, March 23, 2023 7:23 PM
**To:** Records Request <RecordsRequest@gao.gov>
**Subject:** FOIA Request to GAO

> **CAUTION EXTERNAL EMAIL**: Do not click on any links or open any attachments unless you trust the sender and/or know the content is safe. If you are suspicious of the e-mail, click on the Report Suspicious Emails button.

Dear Chief Quality Officer:

Please find attached a FOIA request to the Government Accountability Office.

Regards,
America First Legal Foundation

Exhibit 2

Exhibit 2

**AMERICA FIRST LEGAL**

March 23, 2023

**Via E-Mail**

Chief Quality Officer
U.S. Government Accountability Office
441 G Street, NW, Washington, DC 20548
E-mail: recordsrequest@gao.gov

**Freedom of Information Act Request: GAO Oversight of the Office of Refugee Resettlement and Sex Trafficking of Unaccompanied Migrant Children.**

Dear Chief Quality Officer:

America First Legal Foundation is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans, all to promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's email list contains over 55,000 unique addresses, our Twitter page has 58,400 followers, the Twitter page of our Founder and President has over 419,000 followers, our Facebook page has 116,000 followers, and we have another approximately 31,700 followers on GETTR.

## I.     Background

On October 7, 2020, GAO released a report entitled "Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities."[1] Among other things, the report found that for facilities receiving HHS grants to "provide shelter and other services" to unaccompanied alien children, HHS "hasn't met its own targets for how frequently it visits facilities, and doesn't consistently share information with state agencies that license them."[2]

---

[1] GAO-20-609, https://www.gao.gov/products/gao-20-609
[2] *Id.*

Exhibit 2

The report also found that, under Office of Refugee Resettlement (ORR) "regulations, each facility is to be audited for compliance with standards to prevent and respond to sexual abuse and harassment of children by February 22, 2019, but by April 2020, only 67 of 133 facilities had been audited. In fiscal years 2018 and 2019, ORR also did not meet its policy goals to visit each facility at least every 2 years, or to submit a report to facilities on any corrective actions identified within 30 days of a visit. Without further action, ORR will continue to not meet its own monitoring goals, which are designed to ensure the safety and well-being of children in its care."[3]

The report lists its publication date as September 15, 2020, and its public release date as October 7, 2020. On October 7, 2020, Congresswoman Rosa DeLauro issued a press release stating that she had, as "Chair of the Labor, Health and Human Services, Education, and Related Agencies Appropriations Subcommittee, ... today released a Government Accountability Office (GAO) report requested in March 2019 to examine the care and custody of unaccompanied children in Department of Health and Human Services' Office of Refugee and Resettlement (ORR) shelters."[4]

## II.    Requested Records

AFL hereby requests the following records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, regarding GAO report GAO-20-609:

(1) All communications with Representative Rosa DeLauro or her committee staff. The timeframe for this request is January 4, 2020 to the date that this request is fulfilled.

(2) All internal GAO communications related to the communications in request #1.

(3) All communications between GAO and Congress relating to evidence of, reports involving, or complaints about, sex trafficking or human trafficking of unaccompanied alien children that involve the U.S. Department of Health and Human Services Office of Refugee Resettlement ("ORR") or any grantees of ORR. The timeframe for this request is January 4, 2020 to the date that this request is fulfilled.

(4) All communications between GAO and Congress relating to evidence of, reports involving, or complaints about ORR placing unaccompanied alien

---

[3] *Id.*

[4] Press Release, *DeLauro, Castro Release GAO Report Revealing ORR Risks Awarding Grants to Facilities that Compromise the Safety and Well-Being of Children*, (Oct. 7, 2020), https://tinyurl.com/53vxrnwk.

Exhibit 2

children with sponsors who have not been properly vetted or about ORR using grantees that do not properly vet UAC sponsors.

(5) All internal GAO communications or documents related to the communications in request numbers 3 and 4.

(6) All communications with the Council of Inspectors General for Integrity and Efficiency, or with the HHS Inspector General, relating to the activities listed above in request numbers 3 and 4. The timeframe for this request is January 4, 2020 to the date that this request is fulfilled.

(7) All internal GAO communications or documents related to the communications listed in request #5.

(8) All records regarding the processing of this request.

The following terms should be given the broadest possible interpretation and should be construed to have their ordinary plain English meaning, as well as any definition established by law or regulation for that term or any substantially similar term: "sex trafficking," "human trafficking," and "unaccompanied alien children." Additionally, "unaccompanied alien children" should be construed to include "unaccompanied migrant children," and "unaccompanied noncitizen children," as those terms are commonly used in modern discourse.

## III.    Processing and Production

Per 5 U.S.C. § 552(a)(4)(A)(iii), AFL requests a waiver of all search and duplication fees. The requested documents will be posted in their entirety on our website and made freely available to the general public, and this request is not being made for commercial purposes. AFL broadly disseminates information to the public regarding the operations and activities of the federal government, and numerous federal agencies have routinely granted its requests for fee waivers.

Processing should strictly comply with the processing guidance in the Attorney General's Memorandum on Freedom of Information Act Guidelines. If you have any questions about our request or believe further discussions regarding search and processing would facilitate more efficient production of records of interest to AFL, then please contact me at FOIA@aflegal.org. If AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

To accelerate your release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, please provide responsive records in native format or in PDF format on a USB drive to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, DC 20003.

3

Exhibit 2

Sincerely,

/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation