# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

America First Legal Foundation,

    *Plaintiff*,

v.

U.S. Government Accountability Office,

    *Defendant*.

Civil Action No. 1:25-cv-662-SLS

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO MOTION TO DISMISS

DANIEL EPSTEIN
WILL SCOLINOS
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
daniel.epstein@aflegal.org

CHRISTOPHER MILLS
D.D.C. Bar. No. SC0008
Spero Law LLC
557 East Bay St.
#22251
Charleston, SC 29413
(843) 606-040
cmills@spero.law

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction ..................................................................................................................... 1

Statement of the Case ..................................................................................................... 3

Legal Standard ................................................................................................................ 4

Argument ......................................................................................................................... 4

I.    FOIA textually applies to GAO. ........................................................................... 4

    A.  Title 5 defines GAO as an executive agency subject to FOIA. ...................... 5

        1.  The statutory text supports this reading. ................................................. 5

        2.  The statutory history supports this reading. ............................................ 8

    B.  GAO's organic statute confirms that FOIA applies. ..................................... 10

    C.  GAO's contrary statutory arguments are unavailing. ................................... 11

        1.  GAO's dismissal of §§ 104 and 105 is atextual. ................................... 11

        2.  GAO's reading contradicts ordinary interpretive rules. .......................... 12

        3.  GAO's reading is inconsistent with other parts of Title 5. ...................... 13

        4.  GAO's invocation of precedent fails. ..................................................... 15

II.   GAO's structure and executive powers confirm FOIA's textual application. ...... 18

    A.  GAO is headed by executive officers. ............................................................ 18

    B.  GAO exercises executive powers. ................................................................... 22

        1.  Claims Settlement. .................................................................................. 23

        2.  Contracting. ............................................................................................. 27

        3.  Bid Protests. ............................................................................................ 28

        4.  Verification Examinations. ...................................................................... 30

        5.  Other Executive Powers. .......................................................................... 31

        6.  Subpoena and Sue Agencies, Private Parties, and the President. ............ 32

III.  Independently, GAO's organic statute makes FOIA applicable to it. .................. 37

Conclusion ..................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001)...........................................................38

*Allina Health Servs. v. Price*, 863 F.3d 937 (D.C. Cir. 2017) ....................................14

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875 (3d Cir.),
    *aff'd as modified on reh'g*, 809 F.2d 979 (3d Cir. 1986) ................................21, 29

*Atkins v. United States*, 556 F.2d 1028 (Ct. Cl. 1977), *disapproved of by Energy
    Council of Am. v. FERC*, 673 F.2d 425 (D.C. Cir. 1982) .......................................31

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019)...............................................14, 15

*Boumediene v. Bush*, 553 U.S. 723 (2008) .................................................................13

*Bowsher v. Merck & Co.*, 460 U.S. 824 (1983) ...........................................................15

*Bowsher v. Synar*, 478 U.S. 714 (1986)......................................16, 21, 24, 26, 32, 38

*Buckley v. Valeo*, 424 U.S. 1 (1976)......................................................................18, 33

*Burgess v. United States*, 553 U.S. 124 (2008) .............................................................6

*Castanon v. United States*, 444 F. Supp. 3d 118 (D.D.C. 2020) ...................................4

*Chen v. GAO*, 821 F.2d 732 (D.C. Cir. 1987) .............................................................16

*Chennareddy v. Bowsher*, 935 F.2d 315 (D.C. Cir. 1991)...........................................16

*Clark v. Libr. of Cong.*, 750 F.2d 89 (D.C. Cir. 1984) ................................................17

*Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199 (D.C. Cir. 1986) .............27

*Collins v. Yellen*, 594 U.S. 220 (2021) ..................................................................21, 22

*Comm. on Ways & Means, U.S. House of Representatives v.
    U.S. Dep't of Treasury*, 575 F. Supp. 3d 53 (D.D.C. 2021) ...................................27

*Comm. on Ways & Means, U.S. House of Representatives v.
    U.S. Dep't of Treasury*, 45 F.4th 324 (D.C. Cir. 2022)..........................................27

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)...................................16

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
    585 F. Supp. 3d 63 (D.D.C. 2022) ...........................................................................4

*Delligatti v. United States*, 145 S. Ct. 797 (2025) ......................................................12

*Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ........22

*Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*,
    512 U.S. 267 (1994) ................................................................................................38

*Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7 (D.C. Cir. 2017) ..............16

*Dong v. Smithsonian Inst.*, 125 F.3d 877 (D.C. Cir. 1997)...........................................6

*Duncan v. Walker*, 533 U.S. 167 (2001) ...............................................................9, 14

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*,
    419 F. Supp. 3d 82 (D.D.C. 2019) .........................................................................7

*\*Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*,
    917 F.2d 581 (D.C. Cir. 1990) ...........................................................................6, 7

*Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405 (D.C. Cir. 1985) ............. 17

*FCC v. AT & T Inc.*, 562 U.S. 397 (2011).................................................................... 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ................... 22

*George v. McDonough*, 596 U.S. 740 (2022) ............................................................... 9

*Globe Indem. Co. v. United States*, 291 U.S. 476 (1934) ........................................... 23

*INS v. Chadha*, 462 U.S. 919 (1983) ........................................................................... 36

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012)............................................................................ 37

*Johnson v. United States*, 559 U.S. 133 (2010)............................................................ 8

*Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013) ....................................... 16

*Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ................. 38

*Lawrence v. Staats*, 665 F.2d 1256 (D.C. Cir. 1981).....................................................5

*Legg v. Wash. Metro. Area Transit Auth.*, No. 16-CV-1023 (TSC),
    2017 WL 2533344 (D.D.C. June 9, 2017) .......................................................... 11

*\*Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830 (D.C. Cir. 2024).... 17, 38

*Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64 (D.D.C. 2024) ................................ 35

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017).........7

*Mistretta v. United States*, 488 U.S. 361 (1989) ........................................................ 21

*Myers v. United States*, 272 U.S. 52 (1926)................................................................ 20

*Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth.*, 598 U.S. 449 (2023) ................ 10

*Petit v. U.S. Dep't of Educ.*, 675 F.3d 769 (D.C. Cir. 2012) ........................................6

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ..................................................... 32, 36

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023).............................................. 22, 37

*Skinner v. Switzer*, 562 U.S. 521 (2011) .......................................................................4

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) .............................4

*Springer v. Gov't of Philippine Islands*, 277 U.S. 189 (1928).................................... 35

*Trump v. Mazars USA, LLP*, 39 F.4th 774 (D.C. Cir. 2022)................................. 33, 35

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) ..................................................... 33

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ........................................................... 21, 36

*U.S. ex rel. Brookfield Const. Co. v. Stewart*, 234 F. Supp. 94 (D.D.C),
    *aff'd*, 339 F.2d 753 (D.C. Cir. 1964) ...................................................... 24

*U.S. Inst. of Peace v. Jackson*, No. 25-CV-804 (BAH),
    2025 WL 1428641 (D.D.C. May 19, 2025) ......................................... 7, 15

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ............................................. 36

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) ......................... 17

*Walker v. Cheney*, 230 F. Supp. 2d 51 (D.D.C. 2002) ............................................ 33

*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) ......... 8, 17

STATUTES

2 U.S.C. § 687 .......................................................................................... 34, 35

5 U.S.C. § 101 ................................................................................................ 11

5 U.S.C. § 104 ......................................................................... 1, 5, 11, 12, 13, 19

*5 U.S.C. § 105 ......................................................... 1, 5, 6, 7, 8, 10, 11, 12, 13

5 U.S.C. § 306 ................................................................................................ 14

5 U.S.C. § 415 ........................................................................................... 13, 14

*5 U.S.C. § 551 ......................................................... 5, 6, 7, 8, 10, 11, 12, 13, 37

*5 U.S.C. § 552 ......................................................... 5, 6, 7, 10, 11, 13, 14, 15, 16

5 U.S.C. § 902 ................................................................................................ 14

5 U.S.C. § 2302 .............................................................................................. 14

5 U.S.C. § 3132 .............................................................................................. 14

5 U.S.C. § 3330 .............................................................................................. 14

5 U.S.C. § 3345 .............................................................................................. 14

5 U.S.C. § 4301 .............................................................................................. 14

5 U.S.C. § 4701 .............................................................................................. 14

5 U.S.C. § 5342 .............................................................................................. 14

5 U.S.C. § 8423 .............................................................................................. 31

10 U.S.C. § 2313 ............................................................................................ 15

31 U.S.C. § 101 .............................................................................................. 37

31 U.S.C. § 102 .............................................................................................. 11

31 U.S.C. § 701 ......................................................................................... 10, 37

31 U.S.C. § 702 ............................................................................................. 10, 18

31 U.S.C. § 703 ............................................................................................. 18, 20

31 U.S.C. § 704 ........................................................................................ 2, 37, 38

31 U.S.C. § 713 ................................................................................................... 26

31 U.S.C. § 714 ................................................................................................... 26

31 U.S.C. § 715 ................................................................................................... 26

31 U.S.C. § 716 ............................................................................................. 33, 34

31 U.S.C. § 717 ................................................................................................... 26

31 U.S.C. § 719 ................................................................................................... 31

31 U.S.C. § 3323 ................................................................................................. 32

31 U.S.C. § 3511 ................................................................................................. 31

31 U.S.C. § 3523 ................................................................................................. 26

31 U.S.C. § 3526 ............................................................................................ 23, 25

31 U.S.C. § 3527 ................................................................................................. 26

31 U.S.C. § 3529 ................................................................................................. 24

31 U.S.C. § 3530 ................................................................................................. 24

31 U.S.C. § 3552 ................................................................................................. 28

31 U.S.C. § 3553 ............................................................................................ 28, 29

31 U.S.C. § 3554 ................................................................................................. 29

31 U.S.C. § 3555 ................................................................................................. 29

40 U.S.C. § 121 ................................................................................................... 31

40 U.S.C. § 3142 ................................................................................................. 27

40 U.S.C. § 3144 ................................................................................................. 27

41 U.S.C. § 254 ................................................................................................... 15

42 U.S.C. § 6381 ................................................................................................. 30

42 U.S.C. § 6382 ................................................................................................. 30

42 U.S.C. § 6384 ................................................................................................. 30

Budget and Accounting Act, ch. 18, tit. 3, 42 Stat. 21 (1921) ..................... 23

Federal Register Act, ch. 417, 49 Stat. 500 (1935) ......................................... 9

Federal Reports Act of 1942, ch. 811, 56 Stat. 1078 ..................................... 9

REGULATIONS

29 C.F.R. § 5.12 ................................................................................................. 28

3 Fed. Reg. 1209 (May 28, 1938) ................................................................. 9

6 Fed. Reg. 4397 (Aug. 27, 1941) ................................................................. 9

CONSTITUTIONAL PROVISIONS

U.S. Const. art. II, § 3 ................................................................................... 33

OTHER AUTHORITIES

66 Cong. Rec. H8609 (daily ed. June 4, 1920) ............................................. 20

131 Cong. Rec. S14,659 (daily ed. Nov. 1, 1985) ........................................ 19

131 Cong. Rec. S14,666 (daily ed. Nov. 1, 1985) ........................................ 19

Administrative Procedure Act Legislative History, S. Doc. No. 79-248
    (2d Sess. 1946) ........................................................................................ 8

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*
    (2012) ...................................................................................................... 12

Asher C. Hinds, *Hinds' Precedents of the House of Representatives of the United
    States* (1907), https://perma.cc/V5E6-L4FA ........................................ 18

Brief for Appellant Comptroller General of the United States, *Bowsher v. Synar*,
    Nos. 85-1377, 85-1378, 85-1379, 1986 WL 728077 (U.S. Mar. 19, 1986) ....... 19, 21

Brief for Appellants, *Glob. Health Council v. Trump*, Nos. 25-5097, 25-5098,
    2025 WL 1358570 (D.C. Cir. May 9, 2025) ........................................... 36

Comptroller General's Authority to Relieve Disbursing and Certifying Officials
    From Liability, 15 Op. O.L.C. 80 (1991) ........................................ 24, 25

Edward R. Murray, *Beyond* Bowsher: *The Comptroller General's Account Settlement
    Authority and Separation of Powers*, 68 Geo. Wash. L. Rev. 161 (1999) ............ 30

*GAO Legislation: Hearing Before the Subcommittee on Reports, Accounting, and
    Management of the Committee on Government Operations, United States Senate*,
    94th Cong., 1st Sess. (1975) ................................................................... 35

*GAO Legislation: Hearings on S.1878 & S.1879 Before the Subcommittee on Energy,
    Nuclear Proliferation, and Federal Services of the Committee on Governmental
    Affairs, United States Senate*, 96th Cong., 1st Sess. (1979) ................ 20

Implementation of the Bid Protest Provisions of the Competition in Contracting Act,
    8 Op. O.L.C. 236 (Oct. 17, 1984) .......................................................... 29

James McKay Weitzel, Jr., *GAO Bid Protest Procedures Under the Competition in
    Contracting Act: Constitutional Implications After* Buckley *and* Chadha, 34
    Cath. U. L. Rev. 485 (1985) ................................................................... 29

Mark Paoletta & Daniel Shapiro, *The President's Constitutional Power of
    Impoundment*, Ctr. for Renewing Am. (Sept. 10, 2024),
    https://perma.cc/NUJ8-V3TC ................................................................ 35

Mark Paoletta, Daniel Shapiro & Brandon Stras, *The History of Impoundments Before the Impoundment Control Act of 1974*, Ctr. for Renewing Am. (June 24, 2024), https://perma.cc/VMR3-QHAN ...................................................................... 36

*Matter of: Finality of Immigration & Naturalization Service's Decision on Responsibility of Accountable Officer for Physical Losses of Funds*, B-195227 (Nov. 29, 1979) ........................................................................................................... 26

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment, *Walker v. Cheney*, No. 1:02-cv-340-JDB, 2002 WL 32388017 (D.D.C. May 21, 2002)...... 33

President Ford's Points & Authorities in Support of Defendants' Motion to Dismiss, *Staats v. Ford*, No. 75-551 (D.D.C. 1975) .............................................................. 35

Reply Brief for Appellant Comptroller General of the United States, *Bowsher v. Synar*, Nos. 85-1377, 85-1378, 85-1379, 1986 WL 728085 (U.S. Apr. 16, 1986) ........................................................... 19, 20

Statement on Signing H.R.J. Res. 324 into Law, 23 Weekly Comp. Press Doc. 1091 (Oct. 5, 1987)........................................................................................................... 35

Substitute Brief for the United States on Reargument, *Myers v. United States*, No. 2 (U.S. Apr. 17, 1925) ...................................................................................... 19

U.S. Gov't Accountability Off., GAO-16-463SP, *Principles of Federal Appropriations Law* (4th ed. 2016) ........................................................................................... 23, 25

*Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities*, GAO-20-609 (released Oct. 7, 2020), https://perma.cc/8K77-FKHE.................................................................................. 3

*Denotes authorities on which Plaintiff chiefly relies.

## INTRODUCTION

The United States Government Accountability Office does not dispute that the Plaintiff submitted a Freedom of Information Act request to it, that GAO failed to follow FOIA, or that the Plaintiff has standing to sue. Rather, its only argument for dismissal is that GAO is not an "agency" at all under FOIA. That argument fails for three reasons.

First, Congress defined GAO for Title 5 purposes as an "Executive agency." 5 U.S.C. §§ 104, 105. And FOIA—a statute within Title 5—applies to all executive and independent agencies. GAO insists that it "is not an executive agency." But Congress writes the laws, and it chose to make GAO an executive agency for Title 5 purposes. GAO has no coherent account of how Congress could label GAO an "executive agency" for FOIA purposes while simultaneously considering GAO to be "the Congress"—the FOIA exception that GAO invokes. GAO's reading disregards statutory text, history, and context, including the many instances in Title 5 of Congress categorizing GAO separately from the legislative branch. Even GAO's organic statute refutes GAO's reading, as it describes GAO as "independent"—and FOIA extends to independent agencies. Title 5's text should resolve this case. GAO is an executive or independent agency for purposes of FOIA, so FOIA applies to it.

Second, if there were any doubt about that statutory reading, GAO's structure and exercise of extensive executive powers confirm that Congress has considered the agency to be executive (or independent) for FOIA purposes, rather than part of "the Congress." GAO's head is appointed by the President, and Congress has given the

agency all types of executive power to directly regulate other executive agencies and private parties. For instance, GAO can settle claims against the government in a way that is conclusive on other agencies. It can relieve government officials of liability for loss of federal monies. It can eliminate private parties from government contracting. It can decide whether a government procurement may proceed after a bid protest. It can independently conduct verification examinations of private energy companies by issuing subpoenas and entering business facilities. And it can directly—without congressional sanction—bring civil lawsuits to force compliance with these and other laws, a quintessential executive power. Though GAO hints that its exercise of executive powers might be unconstitutional, that has no bearing here. What matters is how Congress understood GAO for purposes of Title 5 and FOIA. And Congress's choice to repeatedly extend executive powers to GAO confirms Congress's understanding of GAO as an executive (or, at least, independent) agency for FOIA purposes.

Third and independently, GAO's organic statute makes "all laws generally related to administering an agency appl[icable] to" GAO. 31 U.S.C. § 704(a). FOIA, part of the Administrative Procedure Act, is a law related to administering an agency. So § 704(a) incorporates FOIA against GAO, no matter whether GAO falls within FOIA's "agency" definition. Though this provision was highlighted in the complaint, GAO offers no argument on the point. But it leads to the same place as the textual and historical analysis of FOIA above: GAO's refusal to fulfill the Plaintiff's FOIA request was unlawful. The Court should deny GAO's motion to dismiss.

## STATEMENT OF THE CASE

The Department of Health and Human Services' Office of Refugee and Resettlement shelters are tasked with ensuring the care and custody of unaccompanied alien children in HHS custody. ECF No. 1 ("Compl.") ¶ 12. On October 7, 2020, GAO released a report entitled "Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities," in which it explained that it had audited this program and found that HHS "hasn't met its own targets for how frequently it visits facilities, and doesn't consistently share information with state agencies that license them." *Id.* ¶ 13 (quoting Compl. Ex. 1); *see Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities* 41, 51–52, GAO-20-609 (released Oct. 7, 2020), https://perma.cc/8K77-FKHE.

On March 23, 2023, the Plaintiff submitted a FOIA request to GAO seeking several records relating to this report. Compl. ¶ 14 (citing Compl. Ex. 1, at 2–3). The next day, the Plaintiff received an email from GAO acknowledging receipt of the request and assigning a case number. *Id.* ¶ 15 (citing Compl. Ex. 2). After nearly a year, the Plaintiff requested a status update from GAO. *Id.* ¶ 16 (citing Compl. Ex. 3). On May 15, 2024—about two months later—GAO denied the FOIA request, stating that "[a]s an agency responsible to the Congress, GAO is not subject to the Freedom of Information Act." *Id.* ¶ 17 (quoting Compl. Ex. 4). GAO explained that it instead applied its own disclosure regulations, contained in 4 C.F.R. Part 81, and was not releasing any records. *Id.*

On July 12, 2024, the Plaintiff appealed GAO's denial of the FOIA request, arguing in detail that "GAO is subject to FOIA." *Id.* ¶ 18 (quoting Compl. Ex. 5). On August 26, 2024, GAO denied this appeal and again insisted that GAO was not subject to FOIA. *Id.* ¶ 19 (citing Compl. Ex. 6). The Plaintiff then filed this lawsuit, and GAO moved to dismiss solely on the ground that it is "the Congress" for FOIA purposes and thus exempt from the statute. ECF No. 9; *see* ECF No. 9-1 ("Memo.").

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022) (cleaned up) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "[I]t is well-settled that the complaint will be construed broadly and liberally," *Castanon v. United States*, 444 F. Supp. 3d 118, 124 (D.D.C. 2020) (cleaned up), and "a complaint need not pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## ARGUMENT

### I.    FOIA textually applies to GAO.

This case can be resolved straightforwardly: Congress categorized GAO as an "executive agency" for Title 5 purposes, and FOIA—which is within Title 5—applies to executive agencies. Statutory text and history support this straightforward reading, which is far more plausible than GAO's reading—under which Congress would simultaneously consider GAO an "executive agency" and "the Congress" for

purposes of the same statutory provisions. GAO's organic statute also supports the Plaintiff's reading, for it mirrors FOIA's definition of "agency" by describing GAO as an independent agency—not as "the Congress." GAO's contrary arguments gloss over statutory text, ignore applicable canons of interpretation, disregard repeated instances in Title 5 of Congress categorizing GAO separately from legislative branch agencies, and overread precedents that did not consider this question. Whatever GAO might be for constitutional purposes, it is an agency subject to FOIA under Title 5.

### A.    Title 5 defines GAO as an executive agency subject to FOIA.

GAO is an "Executive agency" for all purposes of Title 5, which includes the Administrative Procedure Act (APA) and FOIA. 5 U.S.C. § 105. FOIA applies to all "agencies," including any "establishment in the executive branch" and "independent regulatory agency," but does not apply to "the Congress." *Id.* §§ 551(1), 552(f). Because Congress defined GAO as an executive agency, the best reading of FOIA is that GAO is an agency for purposes of FOIA—not "the Congress," as GAO contends. That reading is most consistent with both the text and the statutory history, for the APA's definition of "agency" drew on antecedents that encompassed GAO.

### 1.    The statutory text supports this reading.

GAO concedes that under 5 U.S.C. § 105, "GAO is defined as an 'executive agency.'" Memo. 4. Title 5 classifies GAO as an "independent establishment," and it then defines "an independent establishment" as an "Executive agency" "[f]or the purpose of this title" in its entirety. 5 U.S.C. §§ 104, 105. So for Title 5 purposes, GAO is an "executive agency." *See Lawrence v. Staats*, 665 F.2d 1256, 1258 (D.C. Cir. 1981)

("GAO [i]s an executive agency under 5 U.S.C. § 105"). Thus, the presumption within Title 5 is that GAO is both an agency and executive (or independent) in nature.

FOIA, which is part of the APA, is contained within Title 5 and generally applies to "agencies." 5 U.S.C. § 552. Section 551 defines "agency" for purposes of FOIA's subchapter as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," not including "the Congress" (and certain other entities). *Id.* § 551(1). Section 552, in turn, says that for FOIA purposes, the term "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id.* § 552(f).

As the D.C. Circuit has explained, "the additional language of § 552(f) was added to FOIA in 1974 'to encompass entities that might have eluded the APA's definition in § 551(1).'" *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997) (quoting *Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C. Cir. 1990)); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (noting that "[t]he word 'includes' is usually a term of enlargement, and not of limitation"); *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 791 (D.C. Cir. 2012) (similar).

The interpretive question, then, is whether GAO is "the Congress" under § 551(1) and excluded from FOIA, or an "establishment in the executive branch of the Government" (or an "independent regulatory agency") under § 552(f). Congress's

classification of GAO for Title 5 purposes as an "executive agency" (and an "independent establishment") answers that question. As one court in this district recently explained, "the definition of 'executive agency,' under 5 U.S.C. § 105, which applies to the APA and other statutes governing executive agencies, explicitly includes GAO." *U.S. Inst. of Peace v. Jackson*, No. 25-CV-804 (BAH), 2025 WL 1428641, at *24 (D.D.C. May 19, 2025). Thus, for purposes of FOIA—a provision within the APA and Title 5—GAO is an executive agency. And FOIA applies "to information in the hands of executive agencies." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 672 (D.C. Cir. 2017).

Congress would not have called GAO an "executive agency" if it did not consider GAO to be either an agency or executive in nature. "It would be a tall piece of statutory construction for a court to say that" an "executive agency" as used in § 105 "is not an 'establishment in the executive branch' within the meaning of § 552(f)" in the same title. *Energy Rsch. Found.*, 917 F.2d at 582–83. "Congress could have hardly been clearer." *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 419 F. Supp. 3d 82, 86 (D.D.C. 2019). Having said that FOIA applies to any "agency"— including any "establishment in the executive branch of the Government" (5 U.S.C. § 552(f)(1))—Congress called GAO an "executive agency." Thus, FOIA applies to GAO.

Alternatively, Congress's definition of GAO as an "independent establishment" shows that GAO for FOIA purposes is an "authority of the Government of the United States" (5 U.S.C. § 551(1)) with some characteristics of an "independent regulatory agency" (5 U.S.C. § 552(f)(1)). That classification also subjects GAO to FOIA.

On the other hand, classifying GAO under FOIA as "the Congress" would be "a comical misfit with the defined term[s]" "executive agency" and "independent establishment"—an "implausible" reading of the statute. *Johnson v. United States*, 559 U.S. 133, 145 (2010). It beggars belief that Congress would have expressly defined GAO as an "Executive agency" "[f]or the purposes of" Title 5 (5 U.S.C. § 105) yet simultaneously have understood "the Congress" in Title 5 to include GAO. Congress's determination that GAO should be considered an "executive agency" (and "independent establishment") for Title 5 purposes should be conclusive: GAO is subject to FOIA because it is an executive (or independent) agency for these purposes.

### 2.    The statutory history supports this reading.

This textual understanding is bolstered by the APA's history, which the D.C. Circuit has looked to when interpreting the term "agency" in § 551. The D.C. Circuit said that the "history indicates that the term 'agency' was supposed to have substantially the same meaning in the APA as in two preexisting statutes: the Federal Reports Act of 1942, ch. 811, 56 Stat. 1079, and the Federal Register Act, ch. 417, 49 Stat. 500 (1935)." *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). The history cited by the D.C. Circuit also said that "'agency' is defined substantially as in . . . the Federal Register Regulations (1 C.F.R. 2.1(b), as revised by 6 F.R. 4397)." Administrative Procedure Act Legislative History, S. Doc. No. 79-248, at 12–13 (2d Sess. 1946).

Under these provisions, GAO was generally considered an "agency." The Federal Register Act defined "agency" as "any executive department, independent board, establishment, bureau, agency, institution, commission, or separate office of

the administrative branch of the Government of the United States but not the legislative or the judicial branches of the Government." Federal Register Act, ch. 417, § 4, 49 Stat. 500, 501 (1935) (current version 44 U.S.C. § 1501). The Federal Register Regulations cited by APA's history, in turn, used the same definition—and expressly referred to GAO (then the General Accounting Office) as an "agenc[y]." 3 Fed. Reg. 1209, 1211, 1220 (May 28, 1938) (noting "the Federal agencies listed below" and including GAO); 6 Fed. Reg. 4397, 4398, 4407 (Aug. 27, 1941) (similarly including GAO on the list of "agencies" that issue documents subject to the Federal Register Act). Thus, GAO was considered an "agency" under the Federal Register Act.

The Federal Reports Act defined "agency" similarly—but expressly omitted GAO: "Federal agency" means "any executive department, commission, independent establishment, . . . or administration in the executive branch of the Government; but such terms shall not include the General Accounting Office." Federal Reports Act of 1942, ch. 811, § 7(a), 56 Stat. 1078, 1079–80 (current version 44 U.S.C. § 3502). That Congress recognized the need for this express exemption confirms that it understood GAO to otherwise fall within the definition of an agency. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining that courts are "reluctant to treat statutory terms as surplusage in any setting" (cleaned up)).

In sum, Congress in FOIA and the APA used a "term that had a long regulatory history"—and "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George v. McDonough*, 596 U.S. 740, 746 (2022) (internal quotation marks omitted); *see Ohio Adjutant Gen.'s Dep't v.*

*Fed. Lab. Rels. Auth.*, 598 U.S. 449, 461 (2023) (applying this rule to the term "agency" in Title 5). That regulatory history includes GAO within the term "agency." And unlike the Federal Reports Act, Congress did *not* expressly exempt GAO from the definitions of "agency" in Title 5, APA, and FOIA. Instead, Congress *included* GAO in the definition of "Executive agency." 5 U.S.C. § 105. Statutory text and history both show that GAO falls within FOIA's definition of "agency."

> **B.    GAO's organic statute confirms that FOIA applies.**

GAO's organic statute confirms this reading. There, GAO is defined as "an instrumentality of the United States Government independent of the executive departments." 31 U.S.C. § 702(a). That definition fits neatly within FOIA's coverage, which extends to "each authority of the Government of the United States" and "any independent regulatory agency." 5 U.S.C. §§ 551(1), § 552(f)(1). The organic definition does not say that GAO is an instrumentality of the legislative branch, much less "the Congress" itself. And the preceding section in GAO's organic statute—which defines "agency" for purposes of that chapter to exclude "the legislative branch"—shows that Congress knew how to differentiate between the legislative branch and other instrumentalities of the United States when it wanted to. 31 U.S.C. § 701(a).

Thus, at a minimum GAO's organic statute makes it an independent agency. And it does not foreclose GAO's classification as an executive agency for purposes of FOIA. Though 31 U.S.C. § 702(a) defines GAO as outside "the executive departments," that does not mean it is outside the executive *branch*. Executive agencies exist outside of "executive departments," including for Title 5 purposes. *See* 5 U.S.C. § 105 ("For the purpose of this title, 'Executive agency' means an Executive

department, a Government corporation, and an independent establishment."); *id.* § 101 (listing "Executive departments"); *see also* 31 U.S.C. § 102 ("In this title, 'executive agency' means a department, agency, or instrumentality in the executive branch of the United States Government.").

In short, 31 U.S.C. § 702(a) confirms that the best statutory reading is that GAO is an agency for FOIA purposes.

### C.    GAO's contrary statutory arguments are unavailing.

GAO insists that "GAO's status as []an 'executive agency' for certain purposes under Title 5 does not make it subject to the FOIA." Memo. 4. According to GAO, it is a "legislative branch agenc[y]" for purposes of FOIA, *id.*, even though it is an "executive agency" for purposes of Title 5 generally. In fact, contradicting § 105 directly, GAO announces that it "is not an executive agency." *Id.* at 5 n.2. GAO's reading suffers from several deficiencies. That reading flouts the text, disregards ordinary rules of interpretation, fails to account for instances in Title 5 in which Congress classified GAO and the legislative branch separately, and overreads precedents that did not consider this question of statutory interpretation.

### 1.    GAO's dismissal of §§ 104 and 105 is atextual.

First, nothing in §§ 551 or 552 suggests that Title 5's general understanding of executive agencies does not apply to those sections. And §§ 104 and 105 expressly apply for all purposes of Title 5—including FOIA. *See Legg v. Wash. Metro. Area Transit Auth.*, No. 16-CV-1023 (TSC), 2017 WL 2533344, at *2 (D.D.C. June 9, 2017) (noting that the definitional terms in 5 U.S.C. § 552(f)(1) "are further defined in

§§ 101–105 of Title 5"). GAO's effort to divorce §§ 551 and 552 from definitions that apply to all of Title 5 is atextual.

### 2. GAO's reading contradicts ordinary interpretive rules.

Second, by dismissing Congress's choice in § 105 to call GAO an "Executive agency" as an incorrect fiction, Memo. 5 n.2, GAO's reading would violate standard rules of statutory interpretation. In particular, GAO's reading assumes that Congress gave the definition of "Executive agency" in § 105 a fictional meaning outside the ordinary meaning of "executive agency." But the "legal-interpretation" "presumption" is that "the word being defined" has a "necessary link to the definiens (the definition itself)." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012). As the Supreme Court just explained, "the 'ordinary meaning' of the 'defined term' is an important contextual clue" in statutory interpretation. *Delligatti v. United States*, 145 S. Ct. 797, 808 (2025). "[O]n this side of the looking-glass an entirely artificial definition is rare," so "the meaning of the definition is almost always closely related to the ordinary meaning of the word being defined." *Id.* at 810 (quoting Scalia & Garner, *supra*, at 228). In other words, Congress does not adopt "counterintuitive definitions"—like calling an entity an "executive agency" when it is not. Scalia & Garner, *supra*, at 232. Rather, Congress's definition of GAO as an executive agency "accord[s] with the normal, ordinary meaning of" the terms *executive* and *agency*. *Id.* at 226.

Statutory construction "often turns on context, which certainly may include the definitions of related words." *FCC v. AT & T Inc.*, 562 U.S. 397, 404 (2011) (citation omitted). So even if §§ 104 and 105 somehow did not apply to FOIA, they

12

would still be highly relevant. "When interpreting a statute, [courts] examine related provisions in other parts of the U.S. Code." *Boumediene v. Bush*, 553 U.S. 723, 776 (2008).

How Congress understood "agencies" for purposes of Title 5 generally properly informs the interpretation of the same term within §§ 551 and 552. Applying the congressional understanding from §§ 104 and 105 to FOIA makes GAO an "agency" that is an "establishment in the executive branch" or an independent agency. 5 U.S.C. § 552(f)(1). The congressional understanding of executive agencies expressed in § 105 would not make GAO "the Congress." Given that statutory context includes the definitions of related words, the best interpretation of §§ 551 and 552 is the one consistent with Congress's overarching definition of GAO as an executive (or independent) agency for Title 5 purposes.

### 3.    GAO's reading is inconsistent with other parts of Title 5.

Third, other provisions of Title 5 show that Congress did *not* consider GAO to be a legislative branch agency—and instead considered it an executive (or independent) agency. For example, 5 U.S.C. § 415(a)(2) defines "Federal entity" to be an "entity in the executive branch of the Government, or any independent regulatory agency," with specified exceptions. One exception is "the Government Accountability Office." 5 U.S.C. § 415(a)(2)(E). This exception would be superfluous if GAO would not otherwise be within the sweep of the definition—and the definition (an "entity in the executive branch of the Government, or any independent regulatory agency") is almost word-for-word the same as FOIA's definition of covered agencies in § 552(f)(1). GAO's understanding would render this exception for GAO "wholly superfluous,"

violating basic canons of interpretation. *Duncan*, 533 U.S. at 174. The Plaintiff's reading, by contrast, "*avoids* surplusage" in these provisions. *United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013).

What's more, § 415(a)(2)(F) adds a *separate* exception after the GAO exception for "any entity in the judicial or legislative branches of the Government." Again, GAO's understanding that it *is* a "legislative branch agenc[y]" for Title 5 purposes (Memo. 4) would make § 415's exception for GAO superfluous.

Other provisions of Title 5 also show that "Congress knew how to" cut GAO out of the term "agency" "when it wanted to." *Allina Health Servs. v. Price*, 863 F.3d 937, 944 (D.C. Cir. 2017), *aff'd Azar v. Allina Health Servs.*, 587 U.S. 566 (2019). For instance, for purposes of another chapter in Title 5, Congress defined "agency" to mean "an Executive agency or part thereof" and "an office or officer in the executive branch"—but specifically said that the term "does not include the Government Accountability Office." 5 U.S.C. § 902(1). This usage shows that Congress generally considered GAO an "executive agency" *throughout* Title 5, and that Congress knew how to exempt GAO from covered "agencies" when it wanted to. It did not do so here, instead extending FOIA to agencies, defined to include any "establishment in the executive branch." 5 U.S.C. § 552(f)(1). Other Title 5 provisions teach the same lesson. *See* 5 U.S.C. § 3330(a) ("For the purpose of this section, the term 'agency' means an Executive agency, excluding the Government Accountability Office"); *see also, e.g.*, *id.* §§ 306(f), 2302(a)(2)(C), 3132(a)(1), 3345(a), 4301(1), 4701(1), 5342(a) (all similar). All these related provisions refute GAO's reading, for "Congress's choice" here "strongly

suggests it acted intentionally and purposefully in the disparate" provisions. *Azar*, 587 U.S. at 577 (cleaned up).

### 4. GAO's invocation of precedent fails.

Citing several precedents, GAO insists that it is "well established that GAO is an agency in the legislative branch." Memo. 3. And, according to GAO, "'the Congress' for purposes of [FOIA's] exclusion includes the entire legislative branch." *Id.* But Congress did not classify GAO as an agency in the legislative branch *for purposes of FOIA*, and none of GAO's cases holds otherwise.

"Federal entities may be classified as legislative for one purpose but treated as executive for others." *Jackson*, 2025 WL 1428641, at *24. As shown above, Congress classified GAO as executive (or independent) for purposes of FOIA. GAO's decisions all discuss GAO's status in other contexts—and typically only in dicta. For instance, the Supreme Court in *Bowsher v. Merck & Co.* said in passing that, for purposes of unrelated provisions in Titles 10 and 41, "[t]he GAO is an independent agency within the legislative branch." 460 U.S. 824, 844 (1983) (Memo. 3); *see id.* at 830 (focusing on "statutory construction" of 10 U.S.C. § 2313(b) and 41 U.S.C. § 254(c)). If anything, this description of GAO as an "independent agency" is closer to FOIA's application to "any independent regulatory agency," 5 U.S.C. § 552(f)(1), but regardless, this dicta has nothing to do with the statutory interpretation question here.

Likewise, *Bowsher v. Synar* invalidated the Comptroller General's exercise of some executive powers and noted several indications that Congress "viewed the Comptroller General"—GAO's head—"as an officer of the Legislative Branch" for

constitutional purposes. 478 U.S. 714, 731 (1986) (Memo. 3). But *Synar* did not address GAO's status for purposes of FOIA or Title 5.

In a footnote in *Chen v. GAO*, the D.C. Circuit said that "[t]he GAO is generally recognized as a part of the legislative branch" "and thus exempt from many APA provisions, including § 557." 821 F.2d 732, 737 n.6 (D.C. Cir. 1987) (Memo. 3). But the court there "look[ed] to the APA" "only by way of analogy, as it [wa]s not directly applicable to the" issue before the court, *id.*, so this statement is dicta. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013) (Courts "are not necessarily bound by dicta should more complete argument demonstrate that the dicta is not correct."); *see also Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017). And this statement does not address FOIA and § 552, anyway.

Though the D.C. Circuit said in dicta in *Chennareddy v. Bowsher* that "GAO is a legislative branch agency," that was not in the context of Title 5 or the APA. 935 F.2d 315, 319 (D.C. Cir. 1991) (Memo. 3). The question in *Chennareddy* was whether the district court erred in dismissing a federal age discrimination claim for failure to exhaust administrative remedies, *id.* at 318, and the court's fleeting reference to GAO's status was not explained and not necessary to its decision.

Thus, GAO fails to point to any binding precedent holding that it is exempt from FOIA—much less any precedent that considers and resolves the statutory text and history arguments presented above. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been

so decided as to constitute precedents." (cleaned up)); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (where an issue was neither "raised in briefs or argument nor discussed in the opinion of the [c]ourt," there is no "binding precedent on th[e] point").

Last, GAO notes D.C. Circuit precedent generally suggesting that FOIA's exception for "the Congress" "mean[s] the entire legislative branch." Memo. 5 (quoting *Wash. Legal Found.*, 17 F.3d at 1449). But that has no relevance here, for the statutory text and context show that GAO is simply not in the legislative branch for purposes of FOIA. Plus, the D.C. Circuit's decision in *Wash. Legal Found.* "merely summarize[d] the holding of [prior precedents] in dictum." *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 840 (D.C. Cir. 2024). And *those* precedents, both of which concerned the Library of Congress, have since been abrogated by the D.C. Circuit: "Even if these cases generally classify the Library as a component of 'the Congress' under the APA," the Library "is squarely a component of the Executive Branch in its role as a copyright regulator" given its "important executive power," notwithstanding any "historical association with Congress." *Id.* at 840 & n.4 (discussing *Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984), and *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985)).

All this confirms that no binding precedent addresses or forecloses the statutory arguments above. Though the Plaintiff reserves the right to challenge at a future stage circuit precedent expanding the definition of "the Congress" beyond "the

Congress," GAO is outside the legislative branch for FOIA purposes, so GAO's argument fails.

In sum, FOIA's text encompasses GAO. Congress's statutory determination that GAO is an "executive agency" for Title 5 purposes governs.

## II. GAO's structure and executive powers confirm FOIA's textual application.

Though the statutory text explained above should be conclusive, Congress's structure of GAO—headed by an officer appointed by the President—and conferral of executive powers confirm that it understood GAO to be an executive or independent agency for purposes of FOIA.

### A. GAO is headed by executive officers.

31 U.S.C. § 702 creates the GAO and establishes the Comptroller General as its head. The Comptroller General and his Deputy are both executive officers whom the President appoints with the advice and consent of the Senate. 31 U.S.C. § 703(a)(1); *see Buckley v. Valeo*, 424 U.S. 1, 128 n.165 (1976) ("[T]he Comptroller General is appointed by the President in conformity with the Appointments Clause."). They are paid at a rate equal to the pay rate of level II and level III officers of the Executive Schedule. 31 U.S.C. § 703(f). And they "may be removed" through impeachment. *Id.* § 703(e). Under Article II, § 4, impeachment is for removing "civil officers"—historically understood to mean high-level executive officers. *See* Asher C. Hinds, *Hinds' Precedents of the House of Representatives of the United States* §§ 2444–68 (1907), https://perma.cc/V5E6-L4FA.

The Comptroller General has referenced "his status as an 'executive' officer," citing 5 U.S.C. §§ 104 and 105, as well as congressional statements in accord. Brief for Appellant Comptroller General of the United States 40 & n.118, *Bowsher v. Synar*, Nos. 85-1377, 85-1378, 85-1379, 1986 WL 728077 (U.S. Mar. 19, 1986) (hereinafter "*Synar* Brief") (citing 131 Cong. Rec. S14,659 (daily ed. Nov. 1, 1985) (Sen. Packwood) (GAO is an "executive agency"); *id.* at S14,666 (Sen. Hollings) (GAO "is an executive body. It can make orders.")). Thus, the Comptroller General said, "the Comptroller General is an officer of the United States." Reply Brief for Appellant Comptroller General of the United States 4, *Synar*, 1986 WL 728085 (U.S. Apr. 16, 1986) (hereinafter "*Synar* Reply Brief").

The United States likewise initially described the Comptroller General as "official of the executive department." Substitute Brief for the United States on Reargument 96, *Myers v. United States*, No. 2 (U.S. Apr. 17, 1925). "When the possibility arose in the 1970s that Congress might authorize itself to appoint the Comptroller General, a Department [of Justice] spokesman responded:

> You can't do that. You could do it if the General Accounting Office were an agency that only performed legislative functions. But there are a number of responsibilities that GAO now has and I am sure it would want to retain that are really executive in nature—their enforcement of a variety of programs that come within what is customarily thought of as execution of the laws.
> If that is the case, then the head of that department has to be selected in a way consistent with the appointments clause of the Constitution.

*Synar* Reply Brief 8 (quoting *GAO Legislation: Hearings on S.1878 & S.1879 Before the Subcommittee on Energy, Nuclear Proliferation, and Federal Services of the*

*Committee on Governmental Affairs, United States Senate*, at 77, 96th Cong., 1st Sess. 87 (1979) (Dep. Asst. Att'y Gen. Hammond)).

The Comptroller General has a term of 15 years, but "may retire after becoming 70 years of age and completing 10 years of service as Comptroller General or Deputy Comptroller General." 31 U.S.C. § 703(b), (e). Both the Comptroller and his Deputy "may be removed" via a "joint resolution of Congress, after notice and an opportunity for a hearing," but "only for (i) permanent disability; (ii) inefficiency; (iii) neglect of duty; (iv) malfeasance; or (v) a felony or conduct involving moral turpitude." *Id.* § 703(a).

This congressional removal provision does not show that Congress understood GAO to be part of the legislative branch for Title 5 purposes. As the Comptroller General has explained, President Wilson initially vetoed the bill creating GAO "precisely because" he "objected to congressional participation in his removal" of the Comptroller General, "a presidentially appointed officer of the United States charged with administrative functions." *Synar* Reply Brief 2. President Wilson said "that the power to appoint officers of this kind carries with it, as an incident, the power to remove." *Myers v. United States*, 272 U.S. 52, 169 (1926) (quoting 66 Cong. Rec. H8609 (daily ed. June 4, 1920)). "After the veto, the House floor manager expressly agreed with President Wilson that 'the officer we are creating here [is] an officer of the United States, and his appointment would have to fall under the provisions of Article II of section 2 of the Constitution.'" *Synar* Reply Brief 2–3. "Congress in 1921 disagreed only on what manner of removal the Constitution permitted for such an

officer." *Id.* at 3. President Wilson's view has since prevailed, *see Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025), but the point is that the removal provision does not override other indicia that GAO is an executive (or independent) agency in Title 5.

What's more, as the Comptroller General has explained, "No factual basis exists for believing that the removal provision has made the Comptroller General subservient to Congress." *Synar* Brief 32. Rather, the Comptroller General "appears to be one of the most independent officers in the whole of the federal government." *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 885 (3d Cir.), *aff'd as modified on reh'g*, 809 F.2d 979 (3d Cir. 1986).

GAO's only response here is that this understanding is supposedly "foreclosed by the Supreme Court's decision" in *Synar*. Memo. 5. But *Synar* did not consider GAO's status for Title 5 or FOIA purposes. It was about a constitutional defect—placing executive powers "in the hands of an officer who is subject to removal only by [Congress]." 478 U.S. at 734. *Synar*, like more recent cases, teaches that "Congress may not exercise removal power over officer performing executive functions." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). The defect in *Synar* could have been resolved by invalidating either those executive functions *or* the removal restriction. *See Synar*, 478 U.S. at 734. The Court in *Synar* chose to invalidate the executive functions because Congress had provided a severability clause in the relevant statute. *Id.* at 735; *see Collins v. Yellen*, 594 U.S. 220, 259 (2021) ("[T]he Court simply turned to the remedy specifically prescribed by Congress."). But as

shown below, GAO is now entrusted with many executive functions, and this case does not seek to invalidate those functions.

Plus, the President appoints GAO's head, and as President Wilson explained, "removal is incident to the power of appointment." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010); *see Severino v. Biden*, 71 F.4th 1038, 1043–44 (D.C. Cir. 2023). In fact, "the Constitution prohibits even modest restrictions on the President's power to remove the head of an agency with a single top officer"—like GAO. *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *2 (D.C. Cir. Mar. 10, 2025) (internal quotation marks omitted) (quoting *Collins*, 594 U.S. at 256). This prohibition "applies no matter the 'nature' or 'breadth' of [the agency's] executive authority." *Id.* at *3. *Synar* does not address this "expansion" of removal understanding, *id.*, which confirms that the GAO's vestigial removal restriction does not reflect congressional intent to treat GAO as anything but an executive or independent agency for Title 5 purposes. *Cf. Collins*, 594 U.S. at 267 (Thomas, J., concurring) (explaining that the President retains "the legal power to remove [an executive official] in a manner consistent with the Constitution" notwithstanding a putative statutory restriction).

### B.    GAO exercises executive powers.

GAO's status as an executive agency for Title 5 purposes is further confirmed by the agency's exercise of executive powers. No binding precedent addresses the import of Congress giving GAO these substantial other executive powers, much less in the context of FOIA's application. GAO exercises executive powers across many laws, detailed below, and Congress gave GAO executive power to independently issue

subpoenas and bring lawsuits to enforce these laws. Congress's conferral of such wide-ranging executive power confirms that GAO should be categorized as an executive (or independent) agency for FOIA purposes.

### 1.    Claims Settlement.

First, GAO exercises executive power to settle claims against the government. "When the Budget and Accounting Act, 1921, created the General Accounting Office, the offices of the Comptroller of the Treasury and the six Auditors were abolished and their functions transferred to the Comptroller General." U.S. Gov't Accountability Off., GAO-16-463SP, *Principles of Federal Appropriations Law*, ch. 1, § B.2 (4th ed. 2016). "Among these functions was the issuance of legal decisions to agency officials concerning the availability and use of appropriated funds." *Id.*; *see* Compl. ¶ 39; *see also* Budget and Accounting Act, ch. 18, tit. 3, 42 Stat. 21, 23–26 (1921).

Indeed, "the function which [the Comptroller General] exercises in auditing and settling claims against the government is precisely that which was previously exercised by the Accounting Office in the Treasury Department." *Globe Indem. Co. v. United States*, 291 U.S. 476, 480 (1934). By statute, "[t]he Comptroller General shall settle all accounts of the United States Government and supervise the recovery of all debts finally certified by the Comptroller General as due the Government." 31 U.S.C. § 3526(a). "On settling an account of the Government, the balance certified by the Comptroller General is conclusive on the executive branch of the Government," as is any decision "to change the account." *Id.* § 3526(d). Agency heads "may request a decision from the Comptroller General on a question involving (1) a payment the

disbursing official or head of the agency will make; or (2) a voucher presented to a certifying official for certification." *Id.* § 3529.

"[W]hen the Comptroller General reviews the decision of a disbursing or certifying officer under 31 U.S.C. § 3529 in order to determine whether that decision complies with the law, the Comptroller General is necessarily interpreting the provisions of the underlying law" and "bind[ing] persons in the executive branch to his construction of the law"—each is "plainly an executive rather than a legislative function." Comptroller General's Authority to Relieve Disbursing and Certifying Officials From Liability, 15 Op. O.L.C. 80, 83 (1991); *see Synar*, 478 U.S. at 733 ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

The Comptroller General also has authority to adjust accounts as necessary after "a loss to the United States Government resulting from the fault or negligence of [an] official or agent" or an "uncollectable" loss. 31 U.S.C. § 3530(a). This authority to settle and adjust accounts "is an executive function and in performing it the Comptroller General acts as a member of the Executive branch of the Government." *U.S. ex rel. Brookfield Const. Co. v. Stewart*, 234 F. Supp. 94, 99 (D.D.C), *aff'd*, 339 F.2d 753 (D.C. Cir. 1964).

GAO's primary response is to claim that because GAO "has no power to enforce [its] decisions" about claims settlement, GAO must be solely "advanc[ing] Congress's constitutional prerogatives of the purse." Memo. 8. And, GAO insists, "[t]he Executive Branch has consistently maintained that GAO's opinions are advisory." *Id.*

But GAO omits what its own source makes clear: by statute, "[a] decision regarding an account of the government is binding on the executive branch." *Principles of Federal Appropriations Law*, *supra*, ch. 1, § B.2; *see* 31 U.S.C. § 3526(d) ("[T]he balance certified by the Comptroller General is conclusive on the executive branch of the Government."). No doubt, the executive branch has said that it does not *have* to follow GAO's decisions—but only because the executive believes that these statutes unconstitutionally permit GAO to make "legal determinations." 15 Op. O.L.C. at 84. These statutes, for instance, "would prevent the President from bringing an action to correct what in his view was an illegal payment by an executive branch official if the Comptroller General opined that the payment was not illegal." *Id.* at 84–85.

In other words, the statutes *do* assign GAO executive powers, which GAO purports to exercise, regardless of whether the executive branch believes those exercises are legitimate. That Congress assigned GAO executive powers—regardless of whether it gave GAO a police force to "enforce" its decisions—confirms the congressional understanding of GAO as an executive agency for Title 5 purposes. And that GAO's decisions have some attenuated connection with "Congress's constitutional power of the purse" (Memo. 7) is irrelevant: "Congress may not determine the legal rights, duties and relations of persons outside the legislative branch except by conforming to the constitutional procedures of bicameral passage of a bill and presentment to the President." 15 Op. O.L.C. at 83–84. GAO's decisions,

which the statute purports to make binding on the executive, are not an exercise of legislative power. They involve executive powers.

Further, the Comptroller General may "relieve a present or former accountable official or agent of an agency responsible for the physical loss or deficiency of public money, vouchers, checks, securities, or records, or may authorize reimbursement from an appropriation or fund available for the activity in which the loss or deficiency occurred for the amount of the loss or deficiency paid by the official or agent as restitution." 31 U.S.C. § 3527(a). GAO suggests here that it simply defers to other "agenc[ies'] determinations." Memo. 9. But the statute requires GAO's "agree[ment]" for relief of liability (31 U.S.C. § 3527(a)), and GAO's own source says that it has "statutory authority" "to grant[] relief when it concurs with an agency's findings that relief *should* be granted." *Matter of: Finality of Immigration & Naturalization Service's Decision on Responsibility of Accountable Officer for Physical Losses of Funds*, B-195227, at 2–3 (Nov. 29, 1979). Yet again, GAO exercises executive power.

Relatedly, the Comptroller General has the authority to audit "each agency" and the District of Columbia. 31 U.S.C. § 3523(a); *see id.* §§ 713–15. And he has the authority to "evaluate the results of a program or activity the Government carries out under existing law" on his own "initiative." *Id.* § 717(b)(1). Though GAO claims that auditing is not "inherently executive," Memo. 7, "audit[ing] all federal expenditures" is "clearly executive" "under the [Supreme] Court's definition." *Synar*, 478 U.S. at 775 n.14 (White, J., dissenting). Given that "the power to investigate 'lies at the core of the Executive's duty to see the faithful execution of the laws,'" GAO must be

exercising "the Executive's investigatory powers" through auditing functions. *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 575 F. Supp. 3d 53, 67 (D.D.C. 2021) (quoting *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986)), *aff'd Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 45 F.4th 324 (D.C. Cir. 2022). GAO does not explain its contrary theory.

In sum, GAO's claims settlement powers are executive.

### 2. Contracting.

GAO also has executive power over government contracts under the Davis-Bacon Act. That Act generally requires government contractors and subcontractors to pay prevailing wages for construction projects. *See* 40 U.S.C. § 3142. By statute, "[t]he Comptroller General shall distribute to all departments of the Federal Government a list of the names of persons *whom the Comptroller General has found to have disregarded their obligations to employees and subcontractors*." *Id.* § 3144(b) (emphasis added). And "[n]o contract shall be awarded to persons appearing on the list or to any firm, corporation, partnership, or association in which the persons have an interest until three years have elapsed from the date of publication of the list." *Id.*

Thus, GAO makes the operative finding about violations of the Act *and* instructs other executive agencies accordingly. GAO does not appear to contest that these powers are executive in nature. Instead, GAO downplays these powers, suggesting that "[t]he Department of Labor largely adjudicates" contractor compliance. Memo. 14. But GAO admits that it then "reviews the Department of Labor's record" and decides whether "the record supports a finding that the contractor

27

violated the statute." *Id.*; *see also* 29 C.F.R. § 5.12(a)(2) (regulation quoted by GAO, which says that the Department of Labor submits to GAO a "recommendation . . . regarding debarment"). And GAO does not dispute that it then decides whether to put the contractor on a list—which will be binding on other executive agencies and have obvious implications for the private contractor. GAO possesses executive powers.

### 3.    Bid Protests.

Another category of executive powers possessed by the Comptroller General is deciding bid protests, which directly affect private entities with government contracts. Compl. ¶¶ 47–49. "A protest concerning an alleged violation of a procurement statute or regulation shall be decided by the Comptroller General," 31 U.S.C. § 3552(a), and generally "a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending." *Id.* § 3553(c)(1). If a bid protest is filed within ten days *after* the date a contract is awarded and performance has begun, the procuring agency "shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract." *Id.* § 3553(d)(3)(A).

As the Office of Legal Counsel has explained, because "a procuring agency is required to suspend a procurement upon the filing of a bid protest until the Comptroller General issues his decision on the protest," "the Comptroller General is given the power to determine when the stay will be lifted by the issuance of his

decision on a bid protest." Implementation of the Bid Protest Provisions of the Competition in Contracting Act, 8 Op. O.L.C. 236, 246 (Oct. 17, 1984). In other words, the Comptroller General has the "power to dictate when a procurement may proceed"—"a power that has the effect of altering the legal rights, duties and relations of persons outside the legislative branch." *Id.* at 247 (cleaned up).

GAO has no response to this power, other than to note the irrelevant fact that the statute provides a narrow exception in "urgent and compelling circumstances which significantly affect interests of the United States." 31 U.S.C. § 3553(c)(2)(A); *see* Memo. 10. As GAO's own decision explains, "[t]hose circumstances are limited, and if the words used by the statute have meaning we assume there would be times when the specified circumstances would be absent, and when the executive would therefore be bound to obey the stay and an extension imposed by the Comptroller General." *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979, 995 (3d Cir. 1986). This is executive power.

More broadly, the bid protest provisions give the Comptroller General power "to determine compliance with law, to issue recommendations that are virtually impossible for an agency to refuse to implement, and to grant damages." James McKay Weitzel, Jr., *GAO Bid Protest Procedures Under the Competition in Contracting Act: Constitutional Implications After* Buckley *and* Chadha, 34 Cath. U. L. Rev. 485, 516 (1985); *see* 31 U.S.C. §§ 3554, 3555. "In hearing bid protests, then, the Comptroller General functions as" what used to be called "an independent agency," not as an "arm[] of the legislature." Weitzel, *supra*, at 523. Indeed, "the

Comptroller General issues these decisions," which "require the GAO to provide interpretations of law," "directly to executive branch agencies and employees, rather than reporting them to Congress as its investigatory arm." Edward R. Murray, *Beyond* Bowsher*: The Comptroller General's Account Settlement Authority and Separation of Powers*, 68 Geo. Wash. L. Rev. 161, 165 (1999). GAO does not meaningfully dispute these characterizations. *See* Memo. 10. These powers too are executive

### 4.    Verification Examinations.

Next, the Comptroller General can "conduct verification examinations with respect to the books, records, papers, or other documents of" private energy resources companies, including issuing subpoenas and entering business facilities. 42 U.S.C. §§ 6381–82. "Any person who violates any general or special order of the Comptroller General issued under" these provisions "may be assessed a civil penalty not to exceed $10,000 for each violation," and "[s]uch penalty shall be assessed by the Comptroller General and collected in a civil action brought by the Comptroller General." *Id.* § 6384(a).

These are executive powers. Despite the complaint's explanation of these powers, Compl. ¶ 59, GAO offers no meaningful response. GAO first suggests that these examinations happen only at the "request[]" of "a congressional committee." Memo. 13. That is incorrect. The statute gives GAO discretionary authority to conduct verification examinations—and *separately* requires GAO to conduct examinations requested by a congressional committee. *See* 42 U.S.C. § 6381(a)–(b); *see also id.* § 6382(d) ("*If* the verification examination was conducted at the request of any

30

committee of the Congress . . . ." (emphasis added)). GAO also claims that "[a] verification examination is akin to Congress's legitimate investigatory authority," citing only an irrelevant case that has nothing to do with verification examinations. Memo. 13 (citing *Atkins v. United States*, 556 F.2d 1028, 1062 (Ct. Cl. 1977), *disapproved of by Consumer Energy Council of Am. v. FERC*, 673 F.2d 425 (D.C. Cir. 1982)). But GAO has independent authority to not only conduct a verification examination but also issue orders, assess penalties, and bring civil actions to recover those penalties. That is not a congressional investigation, but enforcement of the law—a core executive power.

### 5.    Other Executive Powers.

GAO exercises other executive powers, too. First, "[t]he Comptroller General shall prescribe the accounting principles, standards, and requirements that the head of each executive agency shall observe. Before prescribing the principles, standards, and requirements, the Comptroller General shall consult with the Secretary of the Treasury and the President on their accounting, financial reporting, and budgetary needs, and shall consider the needs of the heads of the other executive agencies." 31 U.S.C. § 3511(a); *see also* 40 U.S.C. § 121(b)(1) ("The Comptroller General, after considering the needs and requirements of executive agencies, shall prescribe principles and standards of accounting for property."). The Comptroller General must "give the President information on expenditures and accounting the President requests." 31 U.S.C. § 719(f). Similarly, the Comptroller General has the power to prescribe the procedures by which a contribution to the Civil Service Retirement and Disability Fund will be deposited. 5 U.S.C. § 8423(a)(4).

Though the complaint highlights these executive powers—which enable GAO to tell other executive agencies how to perform their duties—GAO largely ignores them and does not explain how they are legislative. *See* Compl. ¶¶ 54, 56. "As Madison explained, '[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). By overseeing and controlling other executive agencies, GAO necessarily exercises executive power. *See Synar*, 478 U.S. at 775 n.14 (White, J., dissenting) ("dictat[ing] accounting techniques for all executive agencies" is "clearly executive under the Court's definition").

Further and "[g]enerally, '[t]he Secretary of the Treasury may pay out money only against a warrant,' which 'shall be' 'countersigned by the Comptroller General.'" Compl. ¶ 55 (quoting 31 U.S.C. § 3323(a)). GAO claims that "[t]his is a function GAO no longer performs," Memo. 7 n.3, but the point is that Congress assigned GAO an executive function and has not removed that statutory assignment—again showing that GAO is an executive agency for Title 5 purposes.

### 6. Subpoena and Sue Agencies, Private Parties, and the President.

Congress has also given GAO independent power to issue civil process in pursuit of its executive powers, including subpoenas and lawsuits. This too is an executive power.

"Since 1980, the Comptroller General has been able to" "bring[] a civil action in the United States District Court for the District of Columbia to require 'the head of [an] agency to produce a record.'" *Walker v. Cheney*, 230 F. Supp. 2d 51, 54 (D.D.C.

2002) (quoting 31 U.S.C. § 716(b)(2)). By statute, the Comptroller General "is authorized to obtain such agency records as the Comptroller General requires to discharge [his] duties"—not limited to investigatory duties—and may bring "civil actions" accordingly. 31 U.S.C. § 716(a)(1). The Comptroller General can even "subpena [sic] a record of a person not in the United States Government" and "bring a civil action" to compel production. *Id.* § 716(c). The statute requires no congressional involvement in or notice of such actions against private parties. *See id.*

This power is executive. After all, "'Congress may not issue a subpoena for the purpose of law enforcement,' a non-legislative function 'assigned under our Constitution to the Executive and the Judiciary.'" *Trump v. Mazars USA, LLP*, 39 F.4th 774, 790 (D.C. Cir. 2022) (quoting *Trump v. Mazars USA, LLP*, 591 U.S. 848, 863 (2020)). "Nor is there a general congressional power simply to inquire into private affairs and compel disclosures" or "to expose for the sake of exposure." *Id.* (cleaned up). Likewise, "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley*, 424 U.S. at 138 (quoting U.S. Const. art. II, § 3).

Thus, as the Department of Justice has explained, "[t]he judicial-enforcement provisions of § 716" "assign[] [GAO] an executive power." Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment, *Walker v. Cheney*, No. 1:02-cv-340-JDB, 2002 WL 32388017 (D.D.C. May 21, 2002). That power is to enforce civil processes for

law enforcement purposes, including claims settlement, auditing, and GAO's other executive functions.

GAO disputes neither its power to file suits against other agencies and private persons nor that this power is an executive one. Rather, GAO generically asserts that its "authorization to investigate the use of public money, and the processes for those investigations, are not executive in nature but rather are an extension of Congress' power of the purse and legislative function." Memo. 11. But GAO's ability to bring private civil suits extends beyond investigations to, for instance, claims settlement and verification examination duties. *See* 31 U.S.C. § 716(a)(1). GAO provides no support for the claim that *these* processes—independent authority to subpoena and file suits against other agencies and private persons for these reasons—are part of the legislative power. So Congress's general ability to conduct investigations does not make GAO's broad civil process authority here legislative. Again, Congress gave GAO executive power, so it must be an executive agency for Title 5 purposes.

Separately, the Comptroller General can—without express congressional approval—sue "any department, agency, officer, or employee of the United States" that impounds budget appropriations. 2 U.S.C. § 687. As discussed, the authority to bring such a judicial action to compel law enforcement is executive. GAO resists this conclusion on the ground that this authority "support[s] Congress's constitutional power to appropriate funds." Memo. 13. But as GAO eventually concedes, what such a lawsuit would seek is an "an order requiring the executive branch to execute the law." *Id.* at 14. And again, "Congress may not issue" civil process "for the purpose of

law enforcement, a non-legislative function assigned under our Constitution to the Executive and the Judiciary." *Mazars*, 39 F.4th at 790 (cleaned up). "The Supreme Court has long held that '[l]egislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them.'" *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 94 (D.D.C. 2024) (quoting *Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 202 (1928)).

Thus, § 687 "vests the [GAO] with the quintessentially executive power to sue to enforce the faithful execution of the [Impoundment Control Act]." Mark Paoletta & Daniel Shapiro, *The President's Constitutional Power of Impoundment*, Ctr. for Renewing Am. (Sept. 10, 2024), https://perma.cc/NUJ8-V3TC; *see* Statement on Signing H.R.J. Res. 324 into Law, 23 Weekly Comp. Press Doc. 1091 (Oct. 5, 1987) (President Reagan describing this power as "executive authority"); President Ford's Points & Authorities in Support of Defendants' Motion to Dismiss 10, *Staats v. Ford*, No. 75-551 (D.D.C. 1975) ("The authority which [§ 687] purports to vest in the Comptroller General is so clearly executive in nature as to be beyond argument.") (reprinted in *GAO Legislation: Hearing Before the Subcommittee on Reports, Accounting, and Management of the Committee on Government Operations, United States Senate*, 94th Cong., 1st Sess. 177 (1975)).

GAO's reliance on its own self-serving statement that "[f]aithful execution of the law does not permit the President to substitute his own policy priorities for those that Congress has enacted into law" by impounding monies (Memo. 14) contradicts the long history of presidential impoundments. *See* Mark Paoletta, Daniel Shapiro &

Brandon Stras, *The History of Impoundments Before the Impoundment Control Act of 1974*, Ctr. for Renewing Am. (June 24, 2024), https://perma.cc/VMR3-QHAN. Elsewhere, the Department of Justice recently highlighted that exact history in explaining that "as a constitutional matter there is no presumption that the Executive Branch must expend all funds that Congress appropriates." Brief for Appellants 50–54, *Glob. Health Council v. Trump*, Nos. 25-5097, 25-5098, 2025 WL 1358570 (D.C. Cir. May 9, 2025). At any rate, the point is that GAO's power to sue to enforce the Impoundment Control Act is an executive power, showing Congress's understanding of GAO as an executive agency for Title 5 purposes.

*    *    *

Thus, GAO exercises a vast range of executive powers. And "[t]he entire 'executive Power' belongs to the President alone." *Seila Law*, 591 U.S. at 213; *see Wilcox*, 145 S. Ct. at 1415 ("the Constitution vests the executive power in the President"). Even "[e]xecutive action under legislatively delegated authority that might resemble 'legislative' action in some respects" remains *executive* action. *INS v. Chadha*, 462 U.S. 919, 954 n.18 (1983); *cf. United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) ("The activities of executive officers may 'take "legislative" and "judicial" forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power,"' for which the President is ultimately responsible."). So Congress's conferral of executive powers on GAO confirms that it understood GAO as an executive (or independent) agency for purposes of FOIA. That GAO may perform other functions "that are exercised primarily for legislative

36

purposes" is unavailing, given that its head is appointed by the President and it exercises powers "generally associated in modern times with executive agencies rather than legislators." *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341–42 (D.C. Cir. 2012).

GAO tries to avoid this conclusion by suggesting that its exercise of some executive powers might be unconstitutional. Memo. 15. But this case does not present an occasion to adjudicate the constitutionality of GAO's powers, and "[c]ourts will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." *Severino*, 71 F.4th at 1044. GAO points to no such "clear signal" here. *Id.* All that matters for this case is that (1) Congress gave executive powers to GAO, and (2) an agency that exercises executive powers is an executive agency under Title 5, so (3) Congress must have understood GAO to be an executive agency for purposes of FOIA.

## III. Independently, GAO's organic statute makes FOIA applicable to it.

Even if GAO were right that it is "the Congress" under FOIA and the APA, FOIA would still apply to it. That is because GAO's organic statute says that "[t]o the extent applicable, all laws generally related to administering an agency apply to the Comptroller General." 31 U.S.C. § 704(a). For purposes of this statute, "agency" "means a department, agency, or instrumentality of the United States Government," *id.* § 101, "not includ[ing] the legislative branch," *id.* § 701(1). FOIA and the APA are statutes generally related to administering an agency—with "agency" likewise defined as "each authority of the Government of the United States" not including "the Congress" (which means, according to GAO, the legislative branch). 5 U.S.C. § 551(a).

37

Thus, as a statute generally related to administering a non-legislative agency, FOIA is incorporated by § 704(a) against GAO. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (explaining that FOIA imposes "agency obligations designed to foster greater access to agency records"); *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001) ("FOIA's terms apply government-wide"); *see also Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 280–81 (1994) (noting that the APA was "designed to introduce greater uniformity of procedure and standardization of administrative practice among the diverse agencies" (internal quotation marks omitted)); *accord Synar*, 478 U.S. at 745 (Stevens, J., concurring in the judgment) (citing § 704(a) in noting that "[i]n at least one respect" "the Comptroller General is treated like an executive agency").

In other words, as the D.C. Circuit recently explained in an analogous case involving the Library of Congress, "[e]ven if . . . [GAO] [i]s a component of 'the Congress' under the APA, Congress may still apply the APA to particular actions of the [agency] by statute," and "[i]t did precisely that" here. *Med. Imaging & Tech. All.*, 103 F.4th at 840. Though the complaint noted this application of § 704(a), Compl. ¶ 25, GAO ignores it. But this provision makes GAO's entire argument—that it is a legislative branch agency—irrelevant. No matter what type of agency GAO is, FOIA applies to it, and its refusal to answer the Plaintiff's FOIA request is unlawful.

## CONCLUSION

For these reasons, the Court should deny GAO's motion to dismiss.

Respectfully submitted,

*/s/ Christopher Mills*

DANIEL EPSTEIN
WILL SCOLINOS
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
daniel.epstein@aflegal.org

CHRISTOPHER MILLS
D.D.C. Bar. No. SC0008
Spero Law LLC
557 East Bay St.
#22251
Charleston, SC 29413
(843) 606-040
cmills@spero.law

JUNE 27, 2025